Nicholson, C. J.,
delivered the ■ opinion of the Court.
This is an action of indebitatus assumpsit,' to recover three hundred and ninety dollars for money had ■ and received. The facts are as follows:
*592 About tbe 1st of January, 1865, Bennet Reagan sold to "W". Gr. Barker two bales of cotton, one for. eighty cents per pound in Tennessee currency, and the other for sixty cents per pound in greenbacks. The cotton was at the time in the seed. The two bales were to be delivered at the house of Reagan. Soon afterwards, Barker paid to Reagan three hundred and ninety dollars in Tennessee currency, which was supposed to be about the price of one of the bales. After this payment was made, to-wit, about the 1st April, 1865, Barker applied to Reagan for one of the bales, claiming that he had paid therefor. Reagan refused to deliver either of the bales, unless both were paid for according to the contract. Barker not having the greenbacks, offered to give Reagan security by depositing gold; but Reagan refused to accept the proposition. Barker then demanded the three hundred and ninety dollars back, but Reagan refused to give it back. Reagan had his cotton, amounting to six bales, ginned and baled, and carried to his own house, where, by the contract, the two bales were to be received by Barker. Two bales were set apart for Reagan, but they were neither weighed nor marked. Several times during the spring and summer, Reagan called on Barker to pay the balance on the cotton, and to come and take it; but Barker failed to pay. At length, in August and September, 1865, Reagan carried all of his cotton, including the two bales set apart for Barker, and sold it at Hickman, Kentucky. Cotton declined in *593 price, and in tlie spring of 1865, was as low as twenty-three cents per pound. About the 1st of May, 1865, when cotton had gone down, Barker said to a witness, that he had bought two hales of cotton from Reagan, and paid for one, and that he had sent for it, hut Reagan wouldn’t let him have it; and that he had been so. troubled about it he would let the cotton go.
The first question that arises is, whether the contract proven was entire or separable? At the time of the contract, the cotton was in the seed. Two bales, when picked and ginned, were to be delivered to Barker, at the house of Reagan, for which the former was to pay the latter, for one bale at eighty cents a pound in Tennessee currency, and for the' other at sixty cents a pound in greenbacks. The consideration to be paid was entire, although the subject of the contract consisted of two bales, and these to be estimated in different currencies. Reagan was not bound to deliver either bale, until the consideration of both was paid according to contract. The contract was, therefore, entire and not separable.
The next question is, was the contract so far complete, as that the title to the cotton was vested in Barker? Reagan was to gin, bale and deposit the cotton for delivery, at his own house. He was not required by the contract to ascertain the weight, or to mark the bales. Whenever he deposited the two bales in his own house, ready for delivery, he had done all that he was required by *594 the contract to do. From that time the cotton belonged to Barker, subject only to Beagan’s right to retain the possession until the purchase money was paid.
From these two propositions other legal consequences follow, on which the respective rights of the parties must be determined.
Upon the failure of Barker to carry out his contract, by paying, or tendering to pay, the balance of the purchase money, Beagan had the right either to rescind the contract, and hold the cotton as his own, or to hold it a reasonable time as the cotton of Barker, and then to sell it as Barker’s cotton, for the satisfaction of his lien for the balance of the purchase money.
If Beagan had elected to rescind the contract, upon Barker’s failure to pay, and he had then sold the cotton, he would have had no right of action against Barker for any loss on the price. In that view of the case, Barker would have had a right of action to recover back the amount he had paid.
If Beagan had elected to hold the cotton as Barker’s, and to sell it as Bai'ker’s, to satisfy the unpaid purchase money, if the net proceeds of the sale, fairly made, fell short of the price at which it was sold to Barker, he would have had a right of action against Barker for damages resulting from his breach of his contract. But in that view, Barker would have had the right to be allowed the amount he had paid.
*595 To apply these legal propositions to the facts of the case before us, the evidence satisfies us that Reagan c]id not rescind the contract, but that he sold the cotton in affirmance of the contract, and to satisfy the unpaid purchase money. According to the evidence, the two bales when sold in August and September, at Hickman, Kentucky, yielded net about three hundred and thirty-five dollars. If to this be added the three hundred and ninety dollars received from Barker, it appears that Reagan received for the two bales about seven hundred and twenty-five dollars. It appears also, that if Barker had paid for the two bales according to his contract, Reagan would have got for the two bales about seven hundred and fifteen dollars. It thus appears, that by selling the cotton, Reagan barely received an amount sufficient to satisfy the unpaid purchase money. To this he had a right to add the three hundred and ninety dollars paid by Barker. These two sums made him whole, and hence he had no right of action against •Barker for his failure to carry out his contract. It is clear, therefore, if Reagan had sued Barker for damages, Barker would have had the right to recoup by setting off the three hundred and ninety dollars he had paid.
But in the case at bar Barker has sued Reagan for the three hundred and ninety dollars paid on the cotton. It is argued, that because he was in fault in failing to perform the whole of his contract, therefore, he has no right to sue for so much *596 as lie did perform. The rule of law, applicable to this state of the case, is laid down by Mr. Parsons in vol. 2, p. 522, as follows: .
“¥e have seen that when parties make a contract which is not apportionable, no part of the consideration can he recovered on an action on the contract, until the whole of that for which the consideration was to he paid is performed. But it must not he inferred from this, that a party, who has performed a part of his side of a contract, and has failed to perform the residue, is in all eases without remedy. For, though he can have no remedy on the contract as originally made, the circumstances may be such, that the law will raise a new contract, and give him a remedy on a quantum meruit.” And, again: “ So too, if one party, without the fault of the other, fails to perform his side of the contract, in such a manner as to enable him to ■ sue upon it, still if the other party have derived a benefit from the part performed, it would he unjust to allow him to retain that without paying anything. The law, therefore, generally implies a promise on his part to pay such a remuneration as the benefit conferred on him is reasonably worth, and to recover that quantum of remuneration, an action of indebitatus assumpsit is maintainable.”
This rule is recognized and approved in Porter v. Woods, 3 Hum., 56, in which Judge Reese said: “ The principle is regarded as now well settled in England and America, 'that after the rescission and *597 abandonment of a special agreement, compensation for partial performance may be recovered, equal to, and limited by, the value and extent . of tbe benefit conferred.”
It follows, that although Barker was in default, in failing to fulfill his entire contract, yet he was not thereby prevented from suing for the value of the benefit conferred upon Reagan by Ms part performance. It does not follow, however, that he is entitled to recover the full value of the part performance, but his recovery must be limited by the extent of the benefit conferred oil Reagan. In the language of Judge Reese: “ In such action, the defendant is entitled to abate the recovery of the plaintiff by the damages he. has sustained on account of non-performance of the plaintiff’s portion of the agreement.”
While, therefore, Barker had the right to sue for the three hundred and ninety dollars paid in Tennessee money, on the other hand, Reagan had the right to set off the damages sustained by him, by his failure to comply with his whole contract. 'We have already seen, that by the proof in the case, the damages to which Reagan would have been entitled by way of abatement or set-off, would be fully equal to the payment made by Barker.
Under a charge which, taken altogether, is not subject to just criticism, the jury found a verdict for the defendant, and we think upon the facts and the law they reached the justice of the case.
We affirm the judgment below.