[No. 16099.  Department Two.  November 22, 1920.]

# PRESCOTT & COMPANY, LIMITED, *Respondent,* v. J. B. POWLES & COMPANY, *Appellant.*[1]

SALES (10,25)—CONTRACTS—ORDER FOR GOODS—ACCEPTANCE—CONSTRUCTION.  In an order for Australian onions taken by a broker, without authority to bind the absent seller, the words "acceptance Australia," has reference to the seller's acceptance of the order, and not to the buyer's acceptance of the goods, especially where the goods were consigned by the seller to itself, retaining title and control.

SAME (72)—PERFORMANCE OF CONTRACT—PARTIAL DELIVERY—REFUSAL TO ACCEPT.  The delivery of goods under an executory contract of sale must be of the exact quantity ordered, or the buyer may refuse to accept them.

SAME (77)—PARTIAL DELIVERY—EXCUSE FOR DEFAULT.  The fact that the United States as a war measure commandeered the only available shipping space necessary for the seller of Australian onions to ship in time the full quantity of onions ordered, does not excuse the seller for his default in delivering the entire quantity, nor render the buyer liable for the part offered, where he refused to accept the same.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered May 1, 1920, upon findings in favor of the plaintiff, in an action on contract, tried to the court.  Reversed.

*James Kiefer,* for appellant.

*Byers & Byers,* for respondent.

TOLMAN, J.—On January 12, 1918, appellant ordered, through a merchandise broker representing the respondent in Seattle, three hundred crates of Australian onions.  The order reads: "Sold to J. B. Powles Co.  How ship, Boat.  When, March.  300 crts. Australian onions, $94 per ton.  Cost, freight & insurance Frisco.  Acceptance Australia."  It appears to

[1]Reported in 193 Pac. 680.

have been understood that there was but one ship each month plying between the Australian port of shipment and San Francisco, and that to comply with the order and ship in March the shipment would necessarily be by the S. S. "Sonoma." About March 12 following, appellant notified the broker of its desire to cancel the order, and caused the broker to cable respondent to that effect, but the cable was not delivered until after the ship had sailed with the partial shipment of onions hereinafter referred to.

In due time the respondent had ready for shipment the full three hundred crates of onions as ordered, but was permitted to load on the ship but two hundred and forty crates, the remainder of the space being taken at the last moment by the United States Government for the purpose of shipping wheat to the United States. The two hundred and forty crates so shipped were consigned to the shipper's order, with directions to notify the buyer, and a draft with bill of lading attached was drawn on the buyer for the purchase price, with the privilege of inspection before payment. Appellant, the buyer, declined to receive the shipment or pay the draft. The goods were sold for its account, and this case was brought to recover the loss occasioned by the resale at a price less than that named in the order, plus the expenses of resale. The case was tried to the court without a jury, resulting in a judgment against appellant for the full amount claimed, from which it appeals.

A number of troublesome questions are here presented: (1) Do the words "acceptance Australia" mean that the order taken by the broker is subject to acceptance by his principal in Australia, or that the purchaser must accept the goods when delivered to the ship in the Australian port? No evidence was offered

at the trial as to the trade meaning of the quoted words, but a number of affidavits are included in the statement of facts, all made after the date of the trial below, and evidently used in the argument of the motion for a new trial, some to one effect and an equal number to the other. We know of no authority which will warrant us in considering these as evidence in the case, and if we did they are so evenly balanced as to offset one another. Taking the order as it reads, in the light of the fact that it was procured and written by a broker for an absent principal, who, on its receipt, might or might not be able or willing to fill it, we are convinced that it means that the order is taken subject to acceptance by the seller when it should reach it in Australia. "The meaning of 'acceptance' in a discussion of executory contracts is an assent to enter into a contract according to the terms of an offer." Williston on Sales, § 482. Since the purchaser was present and assented to the order when it was written, no other acceptance of the offer on its part was needed, while as the seller was absent and could not know of the order or its terms until advised, and the broker is not shown to have had authority to bind it, "acceptance Australia" must be held to mean that the seller, when advised, might accept or reject the order as conditions should warrant. We are the more convinced that this view is correct because the seller consigned the goods to itself and took a bill of lading in its own name, thus maintaining its title and control over the property until the purchaser should, by payment of the draft for the purchase price, come into possession of the endorsed bill of lading and thus acquire title.

(2) It is contended, and generally held, that the delivery of goods under an executory contract must be of the exact quantity ordered, otherwise the buyer may

refuse to receive them, and it is not necessary that he base his refusal on this specific ground, but having refused to accept the goods on other grounds, he may yet defend an action for the purchase price upon this ground. It was so held in *Inman, Akers & Inman v. Elk Cotton Mills,* 116 Tenn. 141, 92 S. W. 760, where the order was for fifty bales of cotton. The buyer sought to cancel the order as in this case, and the seller refused to cancel. The buyer then refused to accept the goods upon the ground that the delivery was not promptly made as the contract required. The seller resold for the account of the buyer and sued for the loss sustained. It developed during the trial that the seller had tendered delivery of but forty-nine bales, and the buyer was permitted to amend his answer and defend upon this ground. The court said:

"A delivery of a less number was not a compliance with this contract. So far as it affected the contract relations of the parties, a failure in the matter of one bale was as much as a failure to deliver any greater number of bales. The complainants sue to recover for the breach of an entire contract, and in order to maintain their bill they must show a compliance or a willingness to comply with it as an entirety. Failing in this latter regard, they fail altogether. Tiedeman on Sales, § 101; *Barker v. Reagan,* 4 Heisk. 590. Their insistance that they were relieved from tendering 50 bales by reason of the repudiation of the contract by the defendant, under the facts found by the Court of Chancery Appeals, cannot avail them. If they had accepted the repudiation. or rather cancellation, of the contract contained in the telegram from the defendant, of July 7th, then this failure would not have affected, other matters out of the way, their right to recovery. This, however, they failed to do. They declined positively to accept the cancellation, and thus kept the contract alive between themselves and the defendant, and thus enabled the defendant, notwithstanding its attempted cancellation, to avail itself of

any previous or subsequent breach on the part of the complainant."

See, also, *Sun Publishing Co. v. Minnesota Type Foundry Co.,* 22 Ore. 49, 29 Pac. 6; *Barton v. Kane,* 17 Wis. 38, 84 Am. Dec. 728; *Price v. Engelke,* 68 N. J. 567, 53 Atl. 698; *Newell v. New Holstein Canning Co.,* 119 Wis. 635, 97 N. W. 487.

(3) Since the seller did accept the order in Australia and was bound to deliver the exact quantity ordered, may he be excused from making full delivery because our national government (rightfully as we must assume), as a war measure, commandeered the only available shipping space for its necessities? Much as the writer would like to so hold, the authorities lay down the contrary rule. Had respondent been sued for damages for failure to ship the full order, this act by the government might have afforded a defense, but having sued on the contract, it is essential to a recovery that a full performance be shown, and no excuse not provided for in the contract will justify a recovery where the performance is partial only, save only an act of the buyer rendering performance impossible or a waiver by it. *Newell v. New Holstein Canning Co., supra: Remy v. Olds,* 21 L. R. A. (Cal.) 645; *The Harriman,* 76 U. S. 161, 9 Wall. 161, and cases there cited.

We conclude that the judgment must be reversed with directions to dismiss the action. It is so ordered.

Mount, Mitchell, and Main, JJ., concur.