[No. 33412. Department One. August 16, 1956.]

S. G. Morin, *Appellant*, v. James K. Johnson *et al.,*
*Respondents.*[1]

[1]Reported in 300 P. (2d) 569.

*Geo. W. Young* and *Benjamin H. Kizer,* for appellant.

*Paine, Lowe, Coffin, Ennis & Herman, W. B. Chandler,* and *McKevitt, Snyder & Thomas,* for respondents.

FINLEY, J.—This is an action to enjoin the operation of a tire recapping plant, and for damages to the plaintiff's business and property, allegedly resulting from the operation of the recapping plant.

The plaintiff acquired the Danmor apartments, located in Spokane, Washington, in 1945. On April 1, 1954, the Johnsons leased a building from the other defendants in this ac-

tion. The building is immediately adjacent to the plaintiff's property. In September, 1954, the Johnsons commenced to operate a tire recapping plant in the building which they had leased. Both the apartment house and the building used by the Johnsons for recapping tires are located in a commercial zone (Class IV) under the zoning ordinance of the city of Spokane. The zoning ordinance prohibits in Class IV, "All uses excluded from the Manufacturing District, [Class V] . . ." Two of the uses so excluded in Class V are: "#33. Oiled, Rubber or Leather Goods manufacture;" and "#45. Rubber or Gutta Percha manufacture or treatment."

Plaintiff Morin alleges in his complaint that the Johnsons' business constitutes a nuisance, in that it is operated in violation of the Spokane zoning ordinance; that the maintenance and operation of the tire recapping plant, located as it is in close proximity to plaintiff's apartment house, is a nuisance in fact, in that it casts off disturbing noises, rubber dust or particles, and offensive odors, thereby endangering the comfort, repose, health, and safety of the plaintiff and his tenants; and that, if the operation of the tire recapping plant is allowed to be continued unabated, the plaintiff would suffer damage to his property, the value thereof would be greatly diminished, and he would suffer substantial losses in income.

A brief description of the premises involved and of the tire recapping process is necessary for a better understanding of the issues in this lawsuit. Plaintiff's apartment house is a four-story building, approximately 42 by 130 feet, and contains thirty-six modern, furnished apartments. These are rented to tenants for ordinary residential purposes. The apartment house fronts on Third avenue, facing south. On the defendants' premises is a one-story brick building, approximately 100 by 142 feet, the east wall of which is located on the boundary line common to the two properties. The west wall of the Danmor apartments is eight feet east of the common boundary line. A strip of plaintiff's land, approximately 8 by 130 feet, lies between the two buildings.

Briefly, the tire recapping process, as practiced by the de-

fendants Johnson, consists of taking a previously manufactured tire from which substantially all of the tread design has been worn off but which still retains some use and value as a tire, buffing off the remainder of the tread design, and then applying thereto a manufactured product known as rubber cement. Thereafter, a relatively thin strip of manufactured product called *camelback* is placed on the carcass, and the carcass is put in a mold, where, by the application of heat and pressure, a new tread is vulcanized and fastened to the fabric of the old carcass. The new tread extends only to the shoulders of the tire, not to the bead. The recapping process does not obliterate the side-wall markings or inscriptions which indicate the size, serial number, manufacturer's name, and other insignia.

After a somewhat lengthy trial, the trial judge made comprehensive findings of fact, from which he made the following pertinent conclusions of law:

"I. The tire recapping activities of the Johnson Tire company did not and do not violate the zoning ordinance of the City of Spokane.

"II. No acts or omissions of any of the defendants constituted or constitute a public, statutory, private or common law nuisance per se or in fact."

Judgment was entered in favor of the defendants, dismissing the plaintiff's complaint with prejudice. The plaintiff has appealed.

The primary contention of the appellant is that the tire recapping process, as practiced by the respondents, is within the prohibition of the Spokane zoning ordinance and, consequently, is a nuisance *per se.*

After hearing detailed evidence concerning the mechanics of respondents' tire recapping operation, the trial court found that no raw rubber or other raw materials are used in the process; that no new product is created; and that such process "does not constitute the manufacture of rubber or rubber goods nor the treatment of rubber as distinguished from rubber goods." We cannot say that the evidence clearly preponderates against the trial court's findings on this phase of the matter.

Of further significance is the trial court's finding to the effect that tire recapping was conducted in Spokane as early as 1925 or 1926, and was well known at the time of the passage of the zoning ordinance in 1929; that those charged with the enforcement of the ordinance have uniformly construed it as not prohibiting tire recapping in either Zone IV or Zone V; that numerous permits have been issued by the city of Spokane's chief building inspector for the construction or alteration of buildings which were used or were to be used for the purpose of conducting tire recapping in Zones IV and V; and that all, or substantially all, of the seventeen tire recapping establishments in the city of Spokane are situated in Zone IV or Zone V.

It is a familiar rule of statutory construction that, in any doubtful case, the court should give great weight to the contemporaneous construction of an ordinance by the officials charged with its enforcement. This is especially true where the administrative construction has been accompanied over a period of years by the silent acquiescence of the legislative body. *State ex rel. Ball v. Rathbun,* 144 Wash. 56, 256 Pac. 330; *State ex rel. Pirak v. Schoettler,* 45 Wn. (2d) 367, 274 P. (2d) 852; *Matter of 440 East 102nd Street Corp. v. Murdock,* 285 N. Y. 298, 34 N. E. (2d) 329; *Kubby v. Hammond,* 68 Ariz. 17, 198 P. (2d) 134.

It must also be remembered that zoning ordinances are in derogation of the common-law right of an owner to use private property so as to realize its highest utility. Such ordinances must be strictly construed in favor of property owners and should not be extended by implication to cases not clearly within their scope and purpose. *Hauser v. Arness,* 44 Wn. (2d) 358, 267 P. (2d) 691; *Tulsa v. Mizel* (Okla.), 265 P. (2d) 496; *Kubby v. Hammond, supra.*

In view of the foregoing facts and the applicable principles of law, we feel constrained to hold that the trial court did not err in concluding that respondents' tire recapping activities "did not and do not violate the zoning ordinance of the city of Spokane."

We turn now to the question of whether respondents' business constitutes a nuisance in fact. The appellant does

not contend that respondents' recapping plant constitutes a nuisance wherever located—*i.e.*, a nuisance *per se*; but he contends that it is a nuisance in fact, because of its present particular location.

 The precise degree of discomfort that must be produced to constitute a lawful business a nuisance cannot be definitely stated. The fundamental inquiry in cases of this kind is whether the use to which the property is put is reasonable or unreasonable. *Ebur v. Alloy Metal Wire Co.*, 304 Pa. 177, 155 Atl. 280; *Crawford v. Central Steam Laundry*, 78 Wash. 355, 139 Pac. 56; *Powell v. Superior Portland Cement Co.*, 15 Wn. (2d) 14, 129 P. (2d) 536; *Riblet v. Spokane-Portland Cement Co.*, 41 Wn. (2d) 249, 248 P. (2d) 380.

 In the *Riblet* case, *supra*, this court had occasion to discuss the general theory of the law of nuisance and made the following pertinent observation:

"In so far as the law of nuisance is concerned, rights as to the usage of land are relative. The general legal principle to be inferred from court action in nuisance cases is that one landowner will not be permitted to use his land so unreasonably as to interfere unreasonably with another landowner's use and enjoyment of his land.

"The crux of the matter appears to be reasonableness. Admittedly, the term is a flexible one. It has many shades and varieties of meaning. In a nuisance case, *the fundamental inquiry always appears to be whether the use of certain land can be considered as reasonable in relation to all the facts and surrounding circumstances.*

"Application of the doctrine of nuisance requires a balancing of rights, interests, and convenience." (Italics ours.)

The evidence relating to the alleged disturbing noises, rubber dust, and offensive odors is conflicting. Some of the tenants in the Danmor apartments complained of offensive odors, noise, and dirt; while other tenants, as well as neighbors immediately adjacent to respondents' building, either detected no odors, noise or dirt, or found them to be unobjectionable. To set forth the lengthy and conflicting testimony relative to this phase of the matter, would serve no useful purpose. In view of our repeated pronouncement of the rule that the findings of the trial court will not be dis-

turbed on closely conflicting evidence, we deem it sufficient to make brief reference to the pertinent findings of the trial court. The trial court's finding of fact No. XII reads, in part, as follows:

" . . . No acts or omissions of any of the defendants with respect to the Sivyer building or any business therein conducted have reasonably annoyed, injured or endangered the safety, health, comfort or repose of others or in any way rendered them insecure in or essentially interfered with the comfortable enjoyment of life or the use of property, nor have the defendants or any of them used their premises for the exercise of any trade, employment or manufacture, which, by occasioning obnoxious exhalations, offensive smells or otherwise was or is offensive to the senses or dangerous or injurious to the health of individuals or of the public; nor is their use reasonably obnoxious or offensive by reason of emission of odor, dust, smoke, gas or noise."

An additional factor to be considered in determining the reasonableness of the operation of a particular business, is the character of the neighborhood in which it is located. *Powell v. Superior Portland Cement Co., supra.* The Danmor apartments and the respondents' building are located in a neighborhood of commercial enterprises, immediately adjacent to the heart of the downtown business section of Spokane. The trial court found that the usual amount of dust, smoke, soot, odors, noise and vibrations, characteristic of such surroundings, is common to the neighborhood; that the operation of the tire recapping plant "produced no noise, dirt, soot, vibrations, or odors of objectionable or unreasonable intensity within the Danmor apartments, *considering the character of the neighborhood.*"

The evidence does not preponderate against the trial court's findings of fact; and the findings, in turn, support the trial court's conclusion that "No acts or omissions of any of the defendants constituted or constitute a public, statutory, private or common law nuisance per se or in fact."

Finally, appellant contends that the trial court erred in sustaining respondents' objection to appellant's offer of proof that his business and property were diminished in value by reason of the operation of the tire recapping plant.

Appellant takes the position that this offer of evidence of permanent damage to the Danmor apartments was admissible as evidence of the nuisance.

 If the exclusion of the evidence was error, it was harmless error. Although evidence of the depreciation of value of property may be considered with respect to the *fact* of nuisance, the fact that the use of property produces such depreciation is not *of itself* sufficient to make such business an actionable nuisance. *Crawford v. Central Steam Laundry,* 78 Wash. 355, 139 Pac. 56; *State ex rel. Warner v. Hayes Investment Corp.,* 13 Wn. (2d) 306, 125 P. (2d) 262; 1 Wood, Nuisances (3d ed.) 5, § 3; Joyce, Law of Nuisances 73, § 40; *Conway v. Gampel,* 235 Mich. 511, 209 N. W. 562; *Flood v. Consumers Co.,* 105 Ill. App. 559.

 Any business may be so carried on as not to be a nuisance, and yet may impair the value of adjoining property. The general rule is well stated in 39 Am. Jur. 309, 310, § 28, as follows:

"To amount to a nuisance, there must be such a tangible injury as renders the enjoyment of the property essentially uncomfortable or inconvenient. It is not enough that the act complained of diminishes the value of the plaintiff's property, . . ."

And in *Crawford v. Central Steam Laundry, supra,* this court had occasion to discuss the essential elements of an actionable nuisance and stated the general rule to be as follows:

"*The enjoyment of one's premises must be sensibly diminished,* either by actual tangible injury to the property itself or by the promotion of such physical discomforts as detract sensibly from the ordinary enjoyment of life. It is not enough that the business sought to be enjoined is productive of inconvenience, or shocks the taste, *or diminishes the value of property in the vicinity,* or causes a reduction in rentals." (Italics ours.)

 In view of the trial court's finding of fact No. XII, *supra,* that the respondents' business did not reasonably annoy, injure, or endanger "the safety, health, comfort, or repose of others," or essentially interfere "with the com-

fortable enjoyment of life or the use of property," we conclude that the exclusion of evidence of the depreciation in value of appellant's property, if error, was not prejudicial to the appellant.

Counsel for the appellant offered not only the testimony of appellant on this point but persisted in his offer on his motion for a new trial by tendering affidavits of two real-estate appraisers which were to the effect that, if the tire recapping plant continued at its present location, appellant's property would be damaged to the extent of thirty-five or forty-five per cent of its value.

These affidavits disclose no evidence which was not available to appellant at the trial; nor are they properly before us as evidence upon the issues in the trial of the case. *Prescott and Co. v. Powles and Co.*, 113 Wash. 177, 193 Pac. 680; *Wheaton v. Woell*, 182 Minn. 212, 234 N. W. 14. In the *Wheaton* case, the Minnesota court stated:

"Neither the trial court nor this court could try or determine issues in the action on affidavits presented on motion for a new trial."

In any event, considering the applicable principles of law discussed hereinbefore, we are convinced that the evidence contained in these affidavits would not support a result different from that reached by the trial court.

The appellant, on his motion for a new trial, also filed an affidavit as to loss of tenants and reduced rental schedule with respect to the Danmor apartments. This affidavit is properly before us, if at all, on the question of newly discovered evidence, and it has been so considered. However, we find nothing in the affidavit requiring a new trial, and the trial court's denial thereof was entirely proper.

The judgment of the trial court is hereby affirmed.

DONWORTH, C. J., SCHWELLENBACH, and OTT, JJ., concur.