979 P.2d 387 (1999)
138 Wash.2d 107
DEVELOPMENT SERVICES OF AMERICA, INC.; Services Group Of America, Inc., a Washington corporation; and Eagle Pacific Insurance Company, a Washington corporation, Petitioners,
v.
CITY OF SEATTLE, a charter city; R.F. Krochalis, in his capacity as Director of the Department of Construction and Land Use, City of Seattle, Respondents.
No. 66653-9.
Supreme Court of Washington, En Banc.
Argued January 12, 1999.
Decided June 10, 1999.
*388 John C. McCullough, Jr., Davis, Wright & Tremaine, Stephen M. Rummage, Seattle, for Petitioners.
David Bruce, Judith Barbour, Asst. City Attorneys, Seattle, for Respondents.
JOHNSON, J.
The City of Seattle denied petitioner, Services Group of America, Inc., a conditional use permit for a rooftop helistop. Petitioner appealed. We granted review in order to determine whether the City of Seattle lawfully found the helistop was not a "necessary element" of petitioner's business services. We affirm the City of Seattle's action denying the permit.

FACTS
Services Group of America, Inc. (SGA) is a diversified family of companies including Food Services of America, Food Products International, AmeriFresh, Eagle Pacific Insurance Group, and Development Services of America. Its operations include food wholesaling, agricultural products, international trade, property development, and insurance.
In 1983, SGA began operating a helicopter from its headquarters on Harbor Island in Seattle. In 1990, SGA discontinued use of the helistop at this location and moved temporarily *389 to Kent to await completion of a new headquarters building in west Seattle, approximately one-half mile from its former headquarters on Harbor Island.
On September 20, 1990, SGA applied to the City of Seattle (City) for a conditional use permit to build a helistop at its new headquarters. In May 1995, the City Council denied the permit request. The City Council concluded the helistop was not a "necessary element" of SGA's business services as required under the applicable portion of former Seattle Municipal Code (SMC) 23.47.006(C)(2)(c).[1] During the pendency of its application, and through to the present, SGA has been using Boeing Field as a landing site for its corporate helicopter.
The pertinent facts adduced during the administrative process tended to show that SGA used its helicopter for a number of purposes related to its business operations. SGA stated its overall business strategy was to centralize operations in the new Seattle headquarters, maintain lean management staffing, use computer and telecommunications links, and high speed point-to-point travel, particularly the corporate helicopter, to transport management personnel to the company's various operations locations.
Declarations by SGA employees stated in general terms that the helicopter's Boeing Field location was unsatisfactory and the rooftop helistop was, therefore, necessary. Travel time of up to 45 minutes or one hour between SGA's west Seattle location and Boeing Field was cited as the reason for the necessity of the rooftop helistop. Evidence showed normal travel time from SGA headquarters to Boeing Field averaged 15 to 20 minutes, with occasional delays of up to one hour.
In addition to the declarations, Lincoln Ferris, SGA's vice president of community relations, and Tom Stewart, SGA's chief executive officer, testified before the City hearing examiner as to the necessity of the helistop. The essence of their testimony went to the utility of the helicopter as a tool to maximize corporate efficiency. As to the specific lack of a rooftop helistop, Ferris testified that, without the helistop, SGA "hasn't gone broke, it hasn't gone out of business, but it has been inconvenient." Transcript Before the Hr'g Examiner at 219 (Nov. 2, 1994). Similarly, Stewart testified that traveling to Boeing Field to utilize the corporate helicopter had been "very inconvenient." Transcript Before the Hr'g Examiner at 243 (Nov. 3, 1994).

PROCEDURAL HISTORY
The City's Department of Construction and Land Use (DCLU) initially reviewed SGA's permit application. SGA was required to meet conditions of the State Environmental Policy Act of 1971 (SEPA), as well as helistop conditional use criteria (former SMC 23.47.006). DCLU's SEPA decision was a final decision. Under the SMC, however, the City Council reserved to itself the original decisionmaking authority on whether helistop conditional use criteria had been met.
After its initial review, DCLU determined neither SEPA nor the City's conditional use criteria were met based on its conclusion the helistop would result in noise and land use impacts that could not be mitigated, and the helistop was not a business necessity. Accordingly, DCLU issued a decision denying the helistop under its SEPA authority, and recommended the City Council deny approval of the helistop under the City's conditional use criteria.
DCLU's negative recommendation under the City's conditional use ordinance was automatically referred to the City hearing examiner. In addition, SGA appealed DCLU's SEPA decision. The hearing examiner consolidated the hearing on the conditional use recommendation with the hearing on the related SEPA appeal. After taking additional evidence and hearing witnesses, the hearing examiner reversed DCLU's SEPA decision, finding there were no unavoidable significant impacts and, therefore, concluding *390 the proposal could not be denied under SEPA authority. That decision was not appealed and is now final.
In a separately issued decision, the hearing examiner addressed the adequacy of SGA's proposal under the City's conditional use criteria for helistops, former SMC 23.47.006. The hearing examiner made specific findings of fact and conclusions of law. The hearing examiner made numerous findings regarding the various business uses to which SGA put its helicopter. However, only a single finding of fact relates to the necessity of the helistop as opposed to the overall usefulness of the helicopter.
The additional time expended by SGA personnel in traveling to and from Boeing Field to access the helicopter, could be considerable from a cumulative view. By way of example, if on average 3 SGA personnel traveled to Boeing to ride on the helicopter, and the trip to Boeing took on average 20 minutes each way, if there was only one trip per month during a year, unnecessary travel time would be the equivalent of 3 weeks.
Findings and Recommendation of the Hr'g Examiner, CF No. 298068, writ at 15 (Dec. 21, 1994). Based on the findings of fact, the hearing examiner concluded the helistop was a "necessary element" of SGA's business and, contrary to DCLU, recommended the City Council approve the project.
On March 28, 1995, the matter came before the City Council's Housing, Community Development and Urban Environment Committee (Committee). The Committee heard oral argument from the parties of record (Pigeon Point Community Council, DCLU, and SGA). On April 25, 1995, after allowing additional time for the members to review the record, the Committee voted 2 to 1 to recommend to the full City Council that approval be denied.
On May 8, 1995, the matter came before the full City Council (council member Donaldson recused at the request of SGA). The City Council adopted the hearing examiner's findings of fact as they related to mitigation pursuant to SEPA. Based on its conclusion that the hearing examiner's findings focused almost exclusively on the usefulness of the helicopter rather than on the necessity of the helistop, the City Council did not adopt the hearing examiner's findings as they related to the "necessary element" criterion under former SMC 23.47.006(C)(2)(c).
Based on its own findings and conclusions, the City Council denied the permit. Primarily, the City Council based its decision on SGA's proximity to Boeing Field, the average commute time saved by moving the helistop to SGA's headquarters, and whether the types of uses described by SGA were of a kind that required a rooftop helistop.
The City Council concluded the average 15- to 20-minute commute time gained by permitting the helistop did not equate to a business necessity, that general statements regarding lost productivity and inefficiency did not prove necessity, and that SGA's continued business growth belied the necessity of the helistop. Additionally, the City Council concluded SGA had proven only that a rooftop helistop was a business convenience, "but convenience does not equate to necessity." Clerk's Papers at 37 (Findings, Conclusions and Decision of the City Council, C.F. 298068, at 12 (May 8, 1995)). Accordingly, the City Council found SGA had not shown the helistop itself was necessary to SGA's business and denied the conditional use application.
On May 19, 1995, SGA sued the City in King County Superior Court for damages under constitutional, statutory, and tort theories; petitioned for constitutional and statutory writs of certiorari and mandamus pursuant to chapter 7.16 RCW; and sought declaratory and injunctive relief. The City removed the cause to federal district court. The federal district court took jurisdiction of all damages claims but remanded the writ issues to the superior court. The superior court upheld the City Council's decision denying the helistop conditional use permit and dismissed the writs.
SGA appealed. The Court of Appeals upheld the City Council's decision in an unpublished opinion. Tradewell Group, Inc. v. City of Seattle, No. 38431-7-I, 1998 WL 54336 (Wash.Ct.App. Feb. 9, 1998). The court reasoned the term "necessary," as contained *391 within former SMC 23.47.006, was synonymous with "essential." On that basis, the court found the City Council's interpretation of the ordinance was not contrary to law and was supported by substantial evidence. We granted review.

ANALYSIS
The only issues before this court are those properly falling within the writ of certiorari (writ of review) under chapter 7.16 RCW.[2] SGA includes in its briefing factual issues relating to the SEPA administrative process, particularly the fact SGA felt it was unfairly treated by the City on the adequacy of its environmental impact statement. However, the hearing examiner found in favor of SGA on all SEPA related issues. That decision was not appealed by the City and is, therefore, not before this court. In addition, because the federal district court retains jurisdiction over SGA's constitutional, statutory, and tort damage claims, issues relating to those claims will not be addressed by this court.

Standard of Review
The grant or denial of a special use permit is adjudicatory in nature. Sunderland Family Treatment Servs. v. City of Pasco, 127 Wash.2d 782, 788, 903 P.2d 986 (1995). Review is by writ of certiorari under chapter 7.16 RCW.[3]Sunderland, 127 Wash.2d at 788, 903 P.2d 986. Under RCW 7.16.120, issues of law are reviewed to determine whether the decision below was contrary to law. Sunderland, 127 Wash.2d at 788, 903 P.2d 986. This is a de novo standard. Issues of fact are reviewed to determine whether they are supported by competent and substantial evidence. Sunderland, 127 Wash.2d at 788, 903 P.2d 986 (citing RCW 7.16.120(4)-(5)). This is a deferential standard and requires the court to view the evidence in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority. Sunderland, 127 Wash.2d at 788, 903 P.2d 986.
The City argues and SGA does not dispute that, under the circumstances of this case, the City Council was the highest forum that exercised fact-finding authority. Although the procedures required the hearing examiner to take evidence and make a recommendation based on written findings and conclusions (SMC 23.76.052(E)-(H)), the City Council reserved to itself the ultimate duty of adopting final findings of fact and conclusions of law. SMC 23.76.056(B). Further, the SMC required the City Council's decision be based upon its own findings and conclusions. SMC 23.76.056(B). Thus, the City Council did not sit in an appellate capacity but was the ultimate fact-finder and original decisionmaker on the conditional use permit at issue. Accordingly, we review the action of the City Council to determine whether it is contrary to law or not supported by substantial evidence in the record. Sunderland, 127 Wash.2d at 788, 903 P.2d 986.
Under the conditional use ordinance at issue, a helistop may be permitted only upon a showing (among other things) that the "helistop is a necessary element of the service provided by the business establishment to which it is accessory...." Former SMC 23.47.006(C)(2)(c) (emphasis added).
On several theories, SGA attacks the City Council's interpretation of the "necessary element" criterion. The gist of SGA's argument is that the City Council's application of the ordinance was overly restrictive and, thus, unlawful.
SGA argues the City Council's interpretation requires an applicant to prove it would *392 go "out of business" without the helistop. SGA also argues the City Council unlawfully applied the criteria of the amended SMC (allowing only medical, news gathering, and emergency service helistops). SGA would have this court interpret the applicable language to permit a helistop when the applicant proves it is "reasonably necessary" to his or her business. Citing Mall, Inc. v. City of Seattle, 108 Wash.2d 369, 378, 739 P.2d 668 (1987), SGA argues ambiguous zoning ordinances are to be strictly construed in favor of the landowner.
Contrary to SGA's argument, the City Council's interpretation of the "necessary element" criterion does not require an applicant to prove that it will go "out of business" in order to meet the criterion. The quoted language merely recognizes that lack of a rooftop helistop has not been a significant business or financial burden to SGA. Moreover, the quote is taken directly from the testimony of Lincoln Ferris, SGA's vice president of community relations, who stated SGA had not gone "out of business" without the helistop, but that it had been "inconvenient."
Nor has SGA shown the City Council improperly applied the subsequently amended helistop ordinance. The City Council's decision appears to be primarily based on its conclusion that the bulk of the evidence went to the usefulness of the helicopter, rather than to the necessity of the helistop itself. Substantial evidence supports the City Council's conclusion that the rooftop helistop was not "necessary," but merely "convenient" and "efficient," and that commute times to Boeing Field do not constitute an undue burden on SGA or deprive it of the usefulness of its helicopter.
SGA's argument that ambiguous zoning ordinances must be construed strictly in favor of the landowner is unpersuasive. First, SGA itself asserts the language in question is not ambiguous. More importantly, the law does not require strict construction in favor of the landowner. So long as the proposed use is within the scope of the ordinance, a zoning ordinance is construed to effectuate its plain purpose and intent.
It is the general rule, recognized and adopted by this court, that zoning ordinances should be liberally construed to accomplish their plain purpose and intent. At the same time, the court bears in mind that they are in derogation of the common-law right to use property so as to realize its highest utility and should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.
State ex rel. Standard Mining & Dev. Corp. v. City of Auburn, 82 Wash.2d 321, 326, 510 P.2d 647 (1973) (emphasis added). Accord Keller v. City of Bellingham, 92 Wash.2d 726, 730, 600 P.2d 1276 (1979); Dando v. King County, 75 Wash.2d 598, 601, 452 P.2d 955 (1969); Morin v. Johnson, 49 Wash.2d 275, 279, 300 P.2d 569 (1956); Hauser v. Arness, 44 Wash.2d 358, 370, 267 P.2d 691 (1954).
Read in full, Mall, Inc. is not to the contrary. See Mall, Inc., 108 Wash.2d at 378, 739 P.2d 668. Furthermore, Mall, Inc. relies on Morin. See Mall, Inc., 108 Wash.2d at 378, 739 P.2d 668 (citing Morin, 49 Wash.2d at 279, 300 P.2d 569). In Morin, we specifically stated that in "any doubtful case, the court should give great weight to the contemporaneous construction of an ordinance by the officials charged with its enforcement." Morin, 49 Wash.2d at 279, 300 P.2d 569 (emphasis added). Accord Keller, 92 Wash.2d at 731, 600 P.2d 1276; Hama Hama Co. v. Shorelines Hearings Bd., 85 Wash.2d 441, 448, 536 P.2d 157 (1975).
Here, the purpose and intent of the ordinance was to limit the use of helistops within commercial zones in the City. Under its plain language, former SMC 23.47.006 permitted helistops only where they were actually "necessary" to the business of the applicant. SGA itself acknowledges former SMC 23.47.006 was intended "to establish a standard for private commercial helistops that was stricter" than previously allowed. Br. of Appellants at 25. According to SGA, "[w]hen the City of Seattle first began adopting new conditional use criteria for helistops in the 1980's, it raised the standards of approval by requiring that such helistop use *393 must not be merely `incidental' to the principal use, but be `integral' to the use." Br. of Appellants at 24.
"Necessary" is not defined in the ordinance. However, it is defined in the dictionary as something "that cannot be done without: that must be done or had: absolutely required: ESSENTIAL, INDISPENSABLE...." Webster's Third New International Dictionary 1511 (3d ed.1986). Similarly, "integral" is defined as, "to form a whole: essential to completeness...." Webster's at 1173. While less restrictive definitions of both words exist, such definitions do not comport with the admittedly restrictive intent of the ordinance.[4]
In context, we find the City Council's interpretation of the ordinance fair and correct. The City Council found SGA did not "require" the helistop to effectively carry on its business. The City Council also concluded the facts did not show a rooftop helistop was "necessary" to SGA's business, but was merely a business "convenience." While the City Council did not attribute a specific definition to the language of the ordinance (merely concluding the helistop was not "necessary" to SGA's business), the City Council's findings and conclusions are not contrary to the purpose and intent of the ordinance and find substantial support in the record.
Given its admittedly restrictive purpose, we reject SGA's argument that the ordinance must be read to permit a helistop whenever an applicant proves it is "reasonably necessary." Such a construction would substantially deprive the ordinance of its limiting effect. Based on the record, SGA simply did not prove the helistop was a "necessary element" of its business and the City Council reasonably so concluded. Although it submitted numerous employee affidavits and provided testimony by various corporate officers, SGA could not identify a single, specific instance where the helistop itself, as opposed to the helicopter in general, was a necessary feature of its business services.
In sum, we hold that in order to fulfill the "necessary element" criterion, something more than business "convenience," "efficiency," or "reasonable" necessity is required. Under the ordinance, an applicant must show the requested helistop is actually "necessary" to its business services. While we agree with SGA that the helicopter itself is a useful business tool,[5] SGA has failed to show why landing on the roof of its west Seattle headquarters is a "necessary" or "essential" element of its business. We conclude the City lawfully interpreted and applied the ordinance when it denied the helistop conditional use permit.
SGA makes several secondary arguments. We address these briefly. First, SGA argues in the absence of any adverse impacts to the public welfare it is beyond the police power of the City to condition approval of the helistop on a showing of business necessity. It argues that because any adverse impacts can be mitigated, the public welfare is no longer affected and the helistop must be approved.
We disagree. Neither the hearing examiner nor the City Council determined that all impacts on the public welfare would be eliminated by mitigation. They simply found that significant impacts could be minimized to conform to SEPA and the Seattle Municipal Code. We agree with the Court of Appeals that safety and noise remain legitimate concerns associated with this helistop (and helistops in general). Tradewell Group, No. 38431-7-I, slip op. at 9. The "necessary element" requirement is rationally related to the legitimate government purpose of limiting such effects upon the community. It is, therefore, within the police power of the City to impose that condition upon SGA.
*394 Next, SGA argues the City Council failed to follow its procedures by not providing for an additional hearing when it rejected several of the hearing examiner's findings and conclusions and substituted its own. SGA relies on former SMC 23.76.054(E) (amended by City of Seattle Ordinance 118012 (Feb.1996)), which states:
If the Council examines the record and determines that a factual error exists or that essential information is missing from the record, the Council may:
1. Remand the request and record to the Director for further consideration and report; or
2. Remand the request to the Hearing Examiner and direct the Hearing Examiner to conduct another hearing, limited to the consideration of perceived factual error or new information, and to reconsider the recommendation; or
3. Open the record to correct the factual error or receive the new information. The Council shall conduct a hearing on the new or corrected information....
SGA's argument on this point is not well taken. First, the City Council did not find that a factual error existed; it simply rejected the hearing examiner's findings and substituted its own based on the record. Second, the City Council's findings were based on the record as found and were not based on any new information. Because the City Council neither corrected any factual error nor received new information, a hearing was not required under former SMC 23.76.054(E)(3).
Finally, SGA argues that, having rejected the City Council's interpretation of the "necessary element" language of the ordinance and substituting its own definition, the Court of Appeals was required to remand the case to the City Council for further consideration. SGA misreads the Court of Appeals decision. The court did not reject the City Council's action, it affirmed it. The only thing the court rejected was the argument put forth by the City attorney for a strict "but for" interpretation of the ordinance in its briefing to the Court of Appeals. In each case cited by SGA, remand resulted only upon reversal of the local land use decision at issue. E.g., Sunderland, 127 Wash.2d at 798, 903 P.2d 986 (denial of permit "improper"); Levine v. Jefferson County, 116 Wash.2d 575, 581-82, 807 P.2d 363 (1991) (county's decision not supported by the evidence); Cougar Mountain Assocs. v. King County, 111 Wash.2d 742, 758, 765 P.2d 264 (1988) (county council did not comply with requirements necessary for SEPA denial).
Having affirmed the City Council's decision, remand by the Court of Appeals would have been superfluous.

CONCLUSION
The City lawfully interpreted and applied its helistop conditional use ordinance. The "necessary element" criterion was within the police power of the City to impose as a condition of permitting. Absent factual error or the need for new information, the City was not required to hold additional fact-finding hearings. Having affirmed the City's action, the Court of Appeals was not required to remand for further consideration.
We affirm in all respects.
GUY, C.J., DURHAM, SMITH, MADSEN, ALEXANDER and IRELAND, JJ., and SEINFELD, J.P.T., concur.
SANDERS, J. (dissenting)
At issue is the constitutionality and meaning of a peculiar Seattle ordinance provision which conditions a helistop permit on proof of private business necessity.
The questions presented are narrow, but important: (1) does an ordinance exceed the constitutional limits of the police power when it conditions a helistop permit upon proof of private business necessity, and (2) if not, is the particular helistop at issue here "a necessary element of the service provided by the business establishment to which it is accessory...."? Former Seattle Municipal Code (SMC) 23.47.006(C)(2)(c) (1986).[1]
*395 1. Regulations based upon a showing of private business necessity beyond scope of police power.
After several years of environmental review, municipal authorities concluded but for the lack of perceived private business necessity this helistop would meet all ordinance criteria, and satisfy all safety and environmental concerns, preliminary to the issuance of a conditional use permit.[2] The applicant argues denial of the permit on this private business necessity ground exceeds the legitimate constitutional scope of the city's police power. The majority rejects this argument in a single paragraph:
We agree with the Court of Appeals that safety and noise remain legitimate concerns associated with this helistop (and helistops in general). Tradewell Group, No. 38431-7-I, slip op. at 9. The "necessary element" requirement is rationally related to the legitimate government purpose of limiting such effects upon the community. It is, therefore, within the police power of the City to impose that condition upon SGA.
Majority at 393.
But the majority's explanation is irrational on its face. The presence or absence of private business necessity has absolutely no logical relation to noise or safety. This proposition is so self-evident the dissent could well rest without further discussion; however, the novelty of the issue draws one further.
To claim that the government has a legitimate role in the regulation of helistops to reduce noise or improve safety does not mean it has a legitimate role to regulate helistops based upon concerns of private profitability. Such concern is that of the private entrepreneur, not the public.
Even if one were to hypothesize that concerns of noise or safety could justify a municipal ordinance completely banning helistops under all circumstances, it would still be within the prerogative of municipal authorities not to legislate to the full extent of its constitutional authority. Such appears to be exactly the situation here as the City of Seattle has reasonably elected through this ordinance to permit helistops under circumstances where the helistop would "not be materially detrimental to the public welfare or injurious to property in the zone or vicinity in which the property is located." SMC 23.47.006(A)(1).
Specific to these facts the Seattle City Council concluded the particular location and use of this helistop, appropriately restricted, met all ordinance criteria associated with concerns of safety and noise. The majority is therefore wrong when it states, "The `necessary element' requirement is rationally related to the legitimate government purpose of limiting such effects [safety and noise] upon the community." Majority at 393. It is not. On the face of this record this helistop was denied for one reason and one reason only: Lack of perceived private business necessity. The question is thus squarely *396 presented whether that ground, in and of itself, falls within the scope of the police power. The majority cites no authority, nor even argues, that it does.
We have never held the police power, however broad, is unlimited.[3] The police power is rooted in the concept that the state is the protector of private persons and their property. This ultimate justification of governance is summarized in the Latin maxim sic utere tuo ut alienum non laedas ("one should use his own property in such a manner as not to injure that of another") (Black's Law Dictionary 1380 (6th ed.1990)); City of Seattle v. Ford, 144 Wash. 107, 111, 257 P. 243 (1927) ("the police power of the government, as understood in the constitutional law of the United States, is simply the power of the government to establish provisions for the enforcement of the common as well as civil-law maxim, sic utere tuo ut alienum non laedas ... Any law which goes beyond that principle, which undertakes to abolish rights, the exercise of which does not involve an infringement of the rights of others, or to limit the exercise of rights beyond what is necessary to provide for the public wel[f]are and the general security, cannot be included in the police power of the government."); cf. Christianson v. Snohomish Health Dist., 133 Wash.2d 647, 668, 946 P.2d 768 (1997) (Talmadge, J., concurring) ("`This [the social compact] does not confer power upon the whole people to control rights which are purely and exclusively private, but it does authorize the establishment of laws requiring each citizen to so conduct himself, and so use his own property, as not unnecessarily to injure another. This is the very essence of government, and has found expression in the maxim sic utere tuo ut alienum non l[a]edas'") (quoting Munn v. Illinois, 94 U.S. 113, 124-25, 4 Otto 113, 24 L.Ed. 77 (1876)) (citation omitted). Consistently, the Supreme Court has held conditioning a land use permit on the approval of private neighbors deprives the property owner of his property without due process absent showing the permitted use would be inconsistent with public health, safety, morals, or general welfare. State of Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 121, 49 S.Ct. 50, 73 L.Ed. 210, 86 A.L.R. 654 (1928).[4]
Most recently we have delimited the police power by utilizing a two-part test:
First, the statute must promote the health, safety, peace, education, or welfare of the people. Second, the requirements of the statute must bear some reasonable relationship to accomplishing the purpose underlying the statute.
Weden v. San Juan County, 135 Wash.2d 678, 700, 958 P.2d 273 (1998) (citations omitted). See also City of Seattle v. Montana, 129 Wash.2d 583, 592, 919 P.2d 1218 (1996).
Initially, we must ask whether the purpose of the challenged ordinance provision is to promote a legitimate public goal within the scope of the police power. Although it is clear much of this ordinance is intended to promote public peace and safety by regulating helistops used by noisy and potentially dangerous helicopters, and these are legitimate aims within the scope of police powers, the clause relating to private business necessity is a horse of another color.
Moreover, to pass muster under a police power analysis an ordinance must be not only justified with reference to the public interest objective, but the terms of the ordinance must be reasonably related to promoting that interest. City of Seattle v. Ford, 144 Wash. 107, 112, 257 P. 243 (1927) ("The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.") (quoting Lawton v. Steele, 152 U.S. *397 133, 137, 14 S.Ct. 499, 38 L.Ed. 385 (1894)); State of Washington ex rel. Seattle Title Trust, 278 U.S. at 121, 49 S.Ct. 50 ("Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities.").
In the past we have upheld regulations which are reasonably related to promoting a truly public interest as within the scope of the police power. E.g., Hass v. City of Kirkland, 78 Wash.2d 929, 932, 481 P.2d 9 (1971) (upholding building ordinance aimed to facilitate fire-fighting, recognizing "[i]t is well settled that the enactment of reasonable ordinances regarding the protection of the lives and safety of persons, as well as the protection of property against fire, is within the police power of a municipality"). But where actions purportedly taken under the police power have not furthered an identifiable public interest they have been struck down. E.g., Maranatha Mining, Inc. v. Pierce County, 59 Wash.App. 795, 805, 801 P.2d 985 (1990) (reversing denial of unclassified use permit to operate a surface mine and asphalt pit based on local "community displeasure" as beyond the police power); Hansen v. Chelan County, 81 Wash.App. 133, 913 P.2d 409 (1996) (reversing denial of conditional use permit for proposed golf course in absence of evidence the golf course would have greater impact than the uses permitted outright.); cf. State ex. rel Wenatchee Congregation of Jehovah's Witnesses v. City of Wenatchee, 50 Wash.2d 378, 384, 312 P.2d 195 (1957) ("Technically, in absence of this [finding that there will be detriment to the health and safety of the community], the action of the zoning authorities was arbitrary and capricious.").
Many of this ordinance's requirements satisfy police power criteria as they are reasonably related to helicopter noise, (e.g., SMC 23.47.006(C)(2)(a) and (b)) and safety (e.g., SMC 23.47.006(C)(2)(d) and (e)). However the private business necessity subsection at issue in the present case, SMC 23.47.006(C)(2)(c), conditioning a permit for a helistop on a demonstration that the helistop is a "necessary element" of the applicant's business, is uniquely a matter of private, not public, concern. This subsection focuses exclusively on the applicant's private business needs, not noise, safety, or other aspects of the public interest.
A helistop crucial to an applicant's business will produce the same noise and result in the same safety concerns as an identical helistop used solely for personal convenience. Just as the public interest to minimize helicopter noise and maximize helicopter safety is not diminished merely because a helistop is necessary to a business, the public interest is no greater for lack of that private business necessity. As a result the private business necessity provision in SMC 23.47.006(C)(2)(c) also fails part two of the police powers test because it does not bear any relationship, let alone a reasonable one, to promoting the public interest by minimizing helicopter noise and maximizing helicopter safety, the police power justifications advanced by the majority to justify this section of the ordinance.
Thus the majority openly invites the governing authority to regulate the private affairs of our citizens by substituting the coercive power of the state for the free choice of individuals in the conduct of their private affairs shorn of public consequence. This constitutes an unconstitutional extension of governmental power beyond established police power boundaries.
2. This helistop "is a necessary element of the service provided by the business establishment to which it is accessory."[5]
Even assuming the constitutionality of the private business necessity portion of this ordinance, we still must determine whether the city council erred in its legal conclusion that the facts of this necessity, as it found them, fail to establish "[t]he helistop is a necessary element of the service provided" as a matter of law. SMC 23.47.006(C)(2)(c). In this regard the Seattle City Council made the following finding of fact:
Hearing Examiner Finding No. 72 regarding cumulative time spent by SGA personnel *398 commuting from the headquarter building to Boeing Field is not persuasive on the issue of business necessity. It is probable that any business located in a large metropolitan area could come up with statistics correlating lost productivity with personnel time spent in traffic. Commute times of 15 to 20 minutes per trip, with occasional delays of up to one hour, are a reasonable cost of doing business in an urban setting like Seattle.
Clerk's Papers (CP) (Finding 11) at 36-37.
14. The evidence put forth by the proponent (e.g., the Declarations of Kasser, Domagala, Pierce, Wilson, Gresser: Testimony of Ferris, Stewart) establishes that the helistop would be a business convenience, but convenience does not equate to necessity.
CP at 37 (Finding 14). The city's argument regarding "necessary" is fleshed out in its brief:
SGA wants to get a jump on the competition. But "necessary" has no meaning at all in the City's ordinance if it means only that which gives SGA a competitive edge, or is efficient for the company, or is convenient for the company.
Br. of Resp'ts at 17.
The city continues:
SGA has generated reams of material on the utility of its helicopter. Obviously, the helicopter has been useful in making sales and ferrying SGA's employees and executives from place to place. As one of SGA's declarations points out, helicopters are also very useful in cultivating the right image in the customer's mind. Without a helicopter, SGA might well have "lost sales and prestige (which translates into sales) as a result." Sabey Declaration, ¶ 9, AR at 181. As Mr. Ferris says, "It is not a coincidence that SGA's family of companies has grown on an average of 30% per year since the acquisition of the helicopter." AR 3239.
Br. of Resp'ts at 22.
The majority concludes, as the city argues, "the `necessary element' criterion" requires "something more than business `convenience,' `efficiency,' or `reasonable' necessity," Majority at 393, thus conceding the helistop as proposed by SGA at least serves a legitimate business purpose to increase corporate efficiency, sales, and profits. But that is not enough, says the majority. Rather it claims the test is whether the helistop is an "essential" element of business. Majority at 393.
As the ordinance does not define the phrase "necessary element" we must repair to the dictionary for a definition. State v. Bolar, 129 Wash.2d 361, 366, 917 P.2d 125 (1996). By definition the term is ambiguous. "Necessary element" could either mean something "essential, indispensable" (the definition adopted by the majority, at 393) or merely convenient or useful, as Black's Law Dictionary defines the term "necessary" in the alternative:
This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity.
Black's Law Dictionary 1029 (6th ed.1990).
We have often interpreted the word "necessary" to mean that which is convenient or useful. City of Des Moines v. Hemenway, 73 Wash.2d 130, 140, 437 P.2d 171 (1968) ("The word `necessary,' as used in connection with eminent domain statutes, means reasonable necessity under the circumstances. It does not mean immediate, absolute, or indispensable need ...." (citations omitted)); Feek v. Feek, 187 Wash. 573, 580, 60 P.2d 686 (1936) (interpreting the word "necessary" in the context of child support as relative and "dependent upon all the facts and circumstances of the particular case"); Berlin v. Robbins, 180 Wash. 176, 188, 38 P.2d 1047 (1934) (holding for the purposes of determining whether an implied easement is necessary, the word "necessary" shall be interpreted as reasonable necessity, not absolute necessity).
"Necessary" as "reasonably necessary" or "convenient" also comports with everyday usage *399 of the word. For example, if one states a computer is "necessary" to draft an opinion, it is obviously not "indispensable," for the opinion could clearly be drafted using pen and paper. Rather "necessary" is used to mean "reasonably necessary" or "convenient," since the computer enables the court to manipulate text making writing more efficient. "Necessary" is often used in this way to connote convenience rather than indispensability.
This record clearly demonstrates this helistop is a "necessary element of the service provided," which is to say: it would be convenient and would make business more efficient and competitive to have one than not to have one. Such is not only the usage most favorable to the property owner, but also it is the usage most consistent with the context which speaks of "an ... element," implying there may be other elements for which the helistop may not be necessary.
Although the majority acknowledges the helistop would be a business convenience for the applicant, Majority, at 393, and acknowledges that "necessary" has different meanings, id., it nevertheless interprets the word "necessary" in the ordinance to mean "indispensable," which is the more restrictive definition of the word.
The majority justifies its conclusion by citation of various cases which stand for the proposition that "`zoning ordinances should be liberally construed to accomplish their plain purpose and intent.'" Majority at 392 (emphasis omitted) (quoting State ex rel. Standard Mining & Dev. Corp. v. City of Auburn, 82 Wash.2d 321, 326, 510 P.2d 647 (1973)). But this rule does not advance the argument, at least in the city's direction, since it is ultimately the purpose of this ordinance to allow helistops which satisfy certain conditions, not prohibit them. By their very nature conditional use permits authorize that which is otherwise prohibited. Indeed SGA's claim that it may maintain the helistop in question is based on the fact that helistops are within the scope of this ordinance.
Ultimately the court's legal choice is between a more restrictive or a less restrictive definition, as the word "necessary" clearly has different meanings. Several canons of statutory construction are applicable, but all lead to a result other than the majority's.
First, this is a conditional use ordinance which allows the creation and maintenance of helistops under certain circumstances. It is therefore a permissive ordinance about which we have stated:
As to such [permissive] ordinances, the weight of authority is to the effect that a denial of a permit must be based on valid or substantial evidence showing that granting the permit would be detrimental to the health, safety, morals, or the general welfare of the community.
State ex rel. Wenatchee Congregation of Jehovah's Witnesses v. City of Wenatchee, 50 Wash.2d 378, 382-83, 312 P.2d 195 (1957). Clearly when used in the context of a permissive ordinance the private business necessity language should be construed in a reasonably permissive fashion so as to erect no barrier to issuance of a conditional use permit not justified by proof of detriment to public health, safety, or morals.
Second, it is an accepted canon of construction that ambiguous zoning ordinances must be construed strictly in favor of the landowner. The majority rejects the applicability of that canon asserting, "[f]irst, SGA itself asserts the language in question is not ambiguous. More importantly, the law does not require strict construction in favor of the landowner." Majority at 392.
Whether a term is ambiguous is a question of law for the court, McGary v. Westlake Investors, 99 Wash.2d 280, 285, 661 P.2d 971 (1983), not a fact to be determined by the parties. Moreover, the majority's formulation of SGA's position is somewhat elusive since SGA claims the term "unambiguously" connotes a meaning more closely associated with convenience than "essential" or "indispensable." As per the dictionary, however, both meanings of the term are arguably acceptable. This fits the classic definition of ambiguity. McGary, 99 Wash.2d at 285, 661 P.2d 971 ("The term `ambiguous' has been defined as `Capable of being understood in either of two or more possible senses'. Ladum [v. Utility Cartage, Inc., 68 Wash.2d *400 109, 411 P.2d 868 (1966)] at 116, quoting Webster's New International Dictionary (2d ed.)").
As to the second point ("the law does not require strict construction in favor of the landowner"), we have oft stated the classic rule:
It must also be remembered that zoning ordinances are in derogation of the common-law right of an owner to use private property so as to realize its highest utility. Such ordinances must be strictly construed in favor of property owners and should not be extended by implication to cases not clearly within their scope and purpose.
Morin v. Johnson, 49 Wash.2d 275, 279, 300 P.2d 569 (1956).
In Mall, Inc. v. City of Seattle, 108 Wash.2d 369, 378, 739 P.2d 668 (1987), we qualified "such preference to property owners is only warranted to the extent ambiguity exists." Consequently, if the term "necessary" is ambiguous, proper application of the traditional rule requires resolution of the ambiguity in favor of the property owner.
As the majority and the city concede there is at least one accepted definition of the term which allows SGA to fulfill ordinance criteria, it is therefore that definition which must be adopted for the purpose of our review.[6] By that definition this helistop is "necessary" and ordinance criteria has been satisfied.
I would therefore remand this case to the Seattle City Council with instructions to grant SGA the permit it requests.
NOTES
[1] In 1993, prior to its decision in this case but after the filing of SGA's application, the City Council amended the conditional use criteria for helistops in commercial zones. Only medical, news gathering, and emergency services are now permitted to operate helistops in commercial zones.
[2] In its original petition and complaint, SGA sought a statutory writ of review under chapter 7.16 RCW and, in addition, writs of mandamus and constitutional review. The Court of Appeals did not address the standard of review nor has SGA briefed this issue to this court. However, a constitutional writ generally will not issue if either a statutory writ or direct appeal is available. Saldin Securities, Inc. v. Snohomish County, 134 Wash.2d 288, 293, 949 P.2d 370 (1998). Similarly, a writ of mandamus will not issue where there is an adequate remedy at law. RCW 7.16.170. Because the statutory writ of review is an available and proper remedy in this case, neither the constitutional writ of review nor the writ of mandamus lies.
[3] Chapter 7.16 RCW no longer provides jurisdiction for judicial review of local land use decisions. See RCW 36.70C.030.
[4] According to Black's Law Dictionary, the meaning of the word "necessary" "must be considered in the connection in which it is used, as it is a word susceptible of various meanings.... It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity.... [Therefore], its force and meaning must be determined with relation to the particular object sought." Black's Law Dictionary 1029 (6th ed.1990).
[5] We reiterate that SGA continues to utilize its helicopter out of Boeing Field, a short distance away.
[1] All references herein to the Seattle Municipal Code are to the section and subsections in effect at the time of SGA's application, September 20, 1990.
[2] The relevant provisions of the Seattle Municipal Code (SMC) state:

A. All conditional uses ... shall meet the following criteria:
1. The use shall not be materially detrimental to the public welfare or injurious to property in the zone or vicinity in which the property is located.
2. In authorizing a conditional use, adverse impacts may be mitigated by imposing any conditions needed to protect other properties in the zone or vicinity and to protect the public interest. The Director shall ... recommend denial of a conditional use if it is determined that adverse impacts cannot be mitigated satisfactorily.
....
C. The following uses ... may be permitted by the Council when the provisions of this subsection and subsection A are met:
....
2. Helistops in NC3, C1 and C2 zones as accessory uses, according to the following standards and criteria:
a. The helistop is located so as to minimize impacts on surrounding areas;
b. The lot is of sufficient size that the operations of the helistop are buffered from the surrounding area;
c. The helistop is a necessary element of the service provided by the business establishment to which it is accessory;
d. Open areas and landing pads are hard surfaced;
e. The helistop meets all federal requirements, including those for safety, glide angles and approach lanes.
SMC 23.47.006(A)(1), (A)(2); (C)(2)(a)-(e) (emphasis added).
[3] For a brief legal history of the principle see Weden v. San Juan County, 135 Wash.2d 678, 723-29, 958 P.2d 273 (1998) (Sanders, J., dissenting).
[4] Certainly it cannot be gainsaid that the classical understanding and justification for a people "putting themselves under government, is the preservation of their property." John Locke, The Second Treatise of Government: An Essay Concerning the True Original, Extent, and End of Civil Government 178, ch. 9, § 124 (Mark Goldie ed., 1993); see also Cicero on the Good Life, "On Duties (II)," at 161-62 (Michael Grant trans., Penguin Group ed. 1971) ("Indeed, the principal reason why, in the first place, states and cities were ever organized at all was to defend private property.").
[5] SMC 23.47.006(C)(2)(c).
[6] The majority also suggests a construction favorable to the city might be justified under that canon which references prior administrative practice. However for such a canon to be applicable, "it is incumbent on that agency to show that it has adopted and applied such interpretation as a matter of agency policy," whereas agency action in the isolated case presented to the court is insufficient to establish the policy. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 815, 828 P.2d 549 (1992). Here, however, the agency has not carried its burden and the majority does not claim it has.