[Filed February 22, 1892.]

## THE SUN PUBLISHING CO. *v.* THE MINNESOTA TYPE FOUNDRY CO.

|  |  |
|---|---|
| 22 | 49 |
| 43 | 183 |
| 22 | 49 |
| 44 | 574 |

Contracts — Time of Performance — Condition Precedent.— In contracts for the sale of personal property, if time appear to be of the essence thereof, on a fair consideration of the language and circumstances, stipulations in regard to it will be construed as conditions precedent.

Sale of Chattels — Entirety of Contract.— The consideration being entire, and the goods having been ordered for a particular purpose known to the seller, the buyer is not bound to accept all or any part of those tendered unless they all substantially meet the requirements of the contract, although some of the goods may be of the kind ordered.

Contract of Sale — Inspection of Goods.— In offering delivery under contracts for the sale of personal property, the vendor is bound to give the vendee a reasonable opportunity to satisfy himself by inspection of the goods, before paying for them, that they are in accordance with the contract.

Coos county: M. L. Pipes, Judge..

Defendant appeals. Affirmed..

XXII Or.— 4.

The questions of law argued upon this appeal arise upon the findings of the court below, which findings are as follows: "The above-named action came on to be heard at the regular term of said court, the plaintiffs appearing by their attorneys, J. M. Siglin and S. H. Hazard, and the defendant by its attorney, John Gray; and the parties consenting and agreeing, a trial by jury was waived, and the trial was had before the court alone; and after hearing the evidence and the argument of counsel, the court being in doubt what decision ought to be made, took the same under consideration, and now being fully advised in the premises, the court finds the following facts and conclusions of law:

"1.   That plaintiff and defendant made the agreement and contract evidenced by the following writings, at the dates therein respectively set out—that is to say, on the seventh day of October, 1890, the plaintiff A. W. Sefton, and plaintiff J. M. Siglin by said Sefton, his duly authorized agent, entered into a contract of which the following is a copy, to wit:

"'PORTLAND, October 7, 1890.

"'The Minnesota Type Foundry Company, by its agent, Frank E. Hall, agrees to sell to A. W. Sefton and J. M. Siglin of Coos Bay, Oregon, a printing outfit comprising a listed invoice of material at the following rates of discount: on all type made by us, $32\frac{1}{2}\%$ off; on machinery, a net price; on all other material under the 25 % column, 30 %; wood type and all other type from other foundries. The above f. o. b. at St. Paul, except the O. S. Gordon press. Two-thirds with order; balance, when goods are invoiced.

"'A. W. SEFTON,

"'for self and Siglin.

"'F. E. HALL.'

"That on the seventh day of November, 1890, the plaintiff, referring to said contract above set out, sent a list of machinery and material wanted under said agree-

ment, which said order was in words and figures as follows, to wit:

"'Marshfield, Oregon, November 7, 1890.

"'*Minnesota Type Foundry Co., 72, 74 and 76 East Fifth Street, St. Paul, Minn.*—Gentlemen: Enclosed herewith find list of machinery and material wanted under agreement with your Mr. Frank E. Hall, dated at Portland, on the seventh ultimo; also check on New York for twelve hundred dollars, payable to your order in accordance with said agreement. As we desire to make first issue January 7, 1891, it is desirable that the material be here not later than December 10th, proximo, hence will ask you to ship at once and notify us of date of shipment. Mark goods Sun Publishing Co., Marshfield, Oregon, care of Coos Bay Coal and Navigation Co., San Francisco, Cal. All type, rules, leads, slugs, metal furniture, etc., are to be on the point system. None other will be accepted except the minion Clarendon points, which are to be of the old MacKellar, Smith & Jordan body. Of these we want about one pound, periods, commas, colons, semicolons, hyphens, apostrophes, exclamations, and interrogations, apportioned as like amount would be in putting up points (fonts). Have large font of the type but no points. Names used in list of material wanted are those used in several books and sheets selected from. As soon as possible have indicated where things were found not in your pony specimen book. If there is any material difference as to cheapness in wood type made on end wood and holly, send holly type 15 ems and upwards; below that size end wood. If you are making any of the material ordered from other books than yours, substitute your make. The sheet of cuts has failed to come to hand. Make out your bill at list prices, segregating the items so that the several different discounts come together and put the total list price at foot of each; then total actual price with discount off on separate sheet.

"'Trusting that you will be prompt in shipment as this is of vital importance to us, we are, yours, respectfully,

"'The Sun Publishing Company,

"'care Siglin & Luse,

"'Per A. W. Sefton, Business Manager.'

"Enclosed in said order as given above was the list of goods ordered therein, as set forth in the defendant's answer, and not disputed in the pleadings, which order and list were duly received by the defendant.

"2.   That there was no other contract or agreement between the plaintiff and defendant other than that set out in finding No. 1, above.

"3.   That the defendant shipped the goods described in the list sent, which said order is set out in finding No. 1, except certain goods to be hereafter described in a subsequent finding, to Flanagan & Bennett, bankers, at Marshfield, Oregon, together with an invoice of the goods so shipped, and the bills of lading thereof, and a draft for $580.59, which was claimed to be the balance of the purchase price for the goods so sent, and which draft was made payable to Flanagan & Bennett, or order, and was directed to the plaintiffs, and was drawn by the defendant. The shipment was made in several parts from November 25, 1890, to December 8, 1890, and defendant directed the said Flanagan & Bennett to deliver the said goods to plaintiff when they should pay said draft, and they were also directed to exhibit the invoices of said goods to plaintiff upon presentation of the said draft.

"4.   Flanagan & Bennett did on the thirtieth day of December, 1890, deliver to plaintiffs the said invoices of the goods so shipped to them, and presented the said draft, and offered to deliver the bills of lading of the said goods, so shipped to them, upon the payment of said draft; but the plaintiffs refused to pay the said draft or receive the said bills of lading or said goods, for the reason, as then stated

by them to said Flanagan & Bennett, that the goods were not in all things the kind ordered, and were such as they did not want.

"5.  That the items in the list of goods ordered, as stated in a former finding, of 175 pounds of long primer No. 11, and of 150 pounds of brevier No. 13, were not filled or sent in the shipment of the goods sent, or at all, but that instead thereof the defendant sent in said shipment $176\frac{1}{2}$ pounds of long primer and 151 pounds of brevier of a different face from that ordered in said order; that said order was made by a reference to a specimen book furnished by defendant to plaintiffs containing the samples of the type they sold, and were in said order designated by numbers appearing on said specimen book; that defendant wrote to plaintiff, which letter was received by plaintiffs before they received the invoices as aforesaid, to the effect that they could not fill the order as to the said long primer and brevier type, but that they substituted therefor a type of another style of face, which was preferable, and was being extensively used by other newspapers.

"6.  That in the printing business the face of type constitutes a material and essential part of the type according to the particular use it is to be put to, and the tastes and wishes of the printer who uses it, and a difference in the face of type is a material and essential difference.

"7.  That defendant did not mark the goods shipped by it to the Sun Publishing Company, or to Marshfield, Oregon, or to the care of the Coos Bay Coal & Navigation Company, San Francisco, Cal., but they were shipped only as set out in finding No. 3.

"8.  That the reasonable and the contract value and price of the goods ordered, is the sum of $1,780.59, of which the plaintiffs have paid the defendant the sum of twelve hundred dollars, and no more; that the reasonable and contract value and price of the goods ordered which

were not sent is $169.87, and of the goods sent and not ordered and not received, $169.87.

"9.  That the plaintiff, before the commencement of this action, duly notified the defendant of its refusal to take or receive the said goods, or any of them, and duly demanded a return of the twelve hundred dollars paid defendant on said order, and that defendant has refused and still does refuse to pay the same. or any part thereof.

"CONCLUSIONS OF LAW.

"1.  That the contract and order set out in the findings of fact are an entire and non-severable contract, and plaintiff was not obliged to accept and receive any part of the goods ordered unless defendant filled substantially the order as to all the goods ordered.  It being not so filled, plaintiff was not obliged to accept the goods sent to Flanagan & Bennett.

"2.  Defendant not having complied with the conditions of the contract on its part, is not entitled to recover any part of the price or value therefor, the goods having been refused, nor to have plaintiff receive or pay for any of the goods shipped to Flanagan & Bennett.

"3.  The plaintiff is entitled to recover the sum of twelve hundred dollars from the defendant, with interest thereon from the first day of January, 1891, at the rate of eight per cent per annum.

"It is, therefore, ordered and adjudged that plaintiff have and recover from the defendant the sum of twelve hundred dollars, with interest thereon from the first day of January, 1891, at the rate of eight per cent, to wit, the total sum of $1,253.33, and legal interest thereon from the entry of the judgment herein until paid, and for its costs to be taxed, and that the property hereinbefore attached be sold to satisfy this judgment and costs and accruing costs.

"MARTIN L. PIPES, Judge."

*Cox, Teal & Minor,* for Appellant.

The two instruments set forth in finding No. 1 must be construed together, and so construed they constitute a contract between the parties—on the part of defendant to sell and deliver personal property; on the part of plaintiff, to accept, receive, and pay for such property in accordance with the terms of the contract. This contract is a severable, and not an entire contract. (*Norris* v. *Harris,* 15 Cal. 256; *Tenny* v. *Mulvaney,* 8 Or. 129; 2 Par. Con. 29, 31, 517; *Lucesco Oil Co.* v. *Brewer,* 66 Pa. St. 351; *Quigley* v. *De Haas,* 82 Pa. St. 267; *Carleton* v. *Woods,* 8 Foster, 290; 3 Am. & Eng. Enc. Law, 916; *Scott* v. *Kittanning Coal Co.* 89 Pa. St. 231; 33 Am. Rep. 753; *Young etc. Mfg. Co.* v. *Wakefield,* 121 Mass. 91; *Downer* v. *Thompson,* 6 Hill, 298; *Southwell* v. *Beezley,* 5 Or. 458.)

The contract between the parties was performed in part by both parties. Having been so performed, neither party could rescind without the consent of the other except by placing the other party in as good a position as that which he occupied before the contract was executed. (1 Benj. Sales, §§ 490, 512, 565, 572, 573.)

The findings further show that the only breach of the contract which plaintiff claims was in not sending each item ordered. They further show that defendant promptly informed plaintiff that it could not furnish these items, and would subsititute other goods suitable for the purpose, and as good or better than those ordered. As the plaintiff took no notice of this letter, it is presumed to have assented to this change. (*Downer* v. *Thompson,* 6 Hill, 208; *Smith* v. *Pettee,* 70 N. Y. 13; *Barton* v. *Kane,* 18 Wis. 262; *Boothby* v. *Scales,* 27 Wis. 637; *Carondelet Iron Works* v. *Moore,* 78 Ill. 65; *Haase* v. *Nonnemacher,* 21 Minn. 486; *Paige* v. *McMillan,* 41 Wis. 337; *Hadley* v. *Prather,* 64 Ind. 137; *Reed* v. *Randall,* 29 N. Y. 359; 86 Am. Dec. 305; *Owens* v. *Sturges,* 67 Ill. 366; *Doane* v. *Dunham,* 65 Ill. 512.)

*S. H. Hazard,* for Respondent.

When trial is by the court, the findings of fact need only cover the material issues made by the pleadings. (*Philomath College* v. *Hartless,* 6 Or. 158; 25 Am. Rep. 510; *McFadden* v. *Friendly,* 9 Or. 222; *McEwen* v. *Johnson,* 7 Cal. 260; *Breeze* v. *Doyle,* 19 Cal. 101.)

If the findings of fact do not cover all of the material issues made by the pleadings, it is the duty of a party to apply to the court for additional findings, and if he fail to do so, cause will not be reversed on that ground, if the findings are sufficient to support the judgment. (*Luce* v. *Isthmus Transit Ry. Co.* 6 Or. 125; 25 Am. Rep. 506; *Logan* v. *Hale,* 42 Cal. 645.)

Ambiguous findings are to be given a construction that accords with pleadings and supports judgment. (*Whitlock* v. *Manciêt,* 10 Or. 166; *Coveny* v. *Hale,* 49 Cal. 555; *People* v. *Hager,* 52 Cal. 189; *Osborne* v. *Clark,* 60 Cal. 623.)

The particular errors relied upon must be specified in a notice of appeal; and it is clearly not sufficient to say that the court erred in making a particular finding, when there is no bill of exceptions, and nothing in the record to show the particular error intended to be charged. (*State* v. *McKinnon,* 8 Or. 487; *N. P. Terminal Co.* v. *Loewenberg,* 11 Or. 286; *Weissman* v. *Russell,* 10 Or. 73; *State* v. *Drake,* 11 Or. 396; *Fulton* v. *Earhart,* 4 Or. 61; *Hallock* v. *Portland,* 8 Or. 29.)

The fact that plaintiff ordered from defendant certain specified goods, and sent to defendant $1,200 as part payment thereon, could not vest in the plaintiff any property in the goods ordered, until the goods had been appropriated to the contract. (Benj. Sales, 428; *Hedden* v. *Roberts,* 134 Mass. 38; 45 Am. Rep. 276.)

When the vendor, under the contract, has the power to select and appropriate the goods to the contract, the title in the goods does not pass, unless he exercise the power in con-

formity with the contract.  He cannot select a greater or less quantity, or different kinds of goods than those ordered, and if he does, the buyer may refuse to receive the goods and recover any part of the purchase price, which may have been advanced.  (Benj. Sales, §§ 505, 506, 512, 38, 910–927; *Bruce* v. *Pearson*, 3 Johns. 534; *Corning* v. *Colt*, 5 Wend. 256; *Leeds* v. *Dunn*, 10 N. Y. 472; *Brewer* v. *Housatonic R. R. Co.* 104 Mass. 593.)

The acceptance of an offer may be sometimes signified by performance alone; but in such case, the performance must be strictly in accordance with the offer.  And where one person orders from another a designated quantity and kind of goods, and directs the manner of shipment, the seller must comply with the order as to kind, quantity, and mode of shipment, and if he fail so to do, the buyer may refuse to receive the goods.  (Benj. Sales, § 38; 1 Pars. Cont. 476, 477; 2 Benj. Sales, §§ 918, 1030, 1032; *Downer* v. *Thompson*, 6 Hill, 208; 3 Am. & Eng. Enc. Law, 846, 858; *Eliason* v. *Henshaw*, 4 Wheat. 225.)

The findings show that defendant furnished plaintiff a book describing the material, to use in ordering goods, and that the goods were ordered from the book so furnished; and in such case the law requires that the goods offered to be delivered must be the same as the description or sample, and if they were not, plaintiff had a right to refuse to accept the goods on that ground.  (2 Benj. Sales, §§ 918–925, 977; *Bradford* v. *Manly*, 13 Mass. 139; 7 Am. Dec. 122; *Perley* v. *Balch*, 23 Pick. 283; 34 Am. Dec. 56; *Fisk* v. *Tank*, 12 Wis. 276; 78 Am. Dec. 737; *Boothby* v. *Scales*, 27 Wis. 626; *Warder* v. *Fisher*, 48 Wis. 338; *Howe Machine Co.* v. *Rosine*, 87 Ill. 105; *Jack* v. *Des Moines etc. R. R. Co.* 53 Iowa, 399; *Flint* v. *Lyon*, 4 Cal. 17; *Polhemus* v. *Heiman*, 45 Cal. 573.)

In many of the cases cited *supra*, the goods had been accepted by the buyer; but in the case at bar, plaintiff refused to accept on the ground that defendant had failed to comply with the order, and in such case vendor must show

compliance. (*Southwell* v. *Beezley*, 5 Or. 143; Benj. Sales, § 48.)

In offering delivery, the vendor is bound to give the buyer an opportunity of examining the goods so that the latter may satisfy himself whether they are in accordance with the contract. (Benj. Sales, §§ 910, 976, 1042.)

The buyer is not bound to comply with the contract at all, but may rescind it, if the seller refuse to let him examine the goods to see if they are in accordance with the contract. (Benj. Sales, § 1049.)

The rule is that when a party claims the benefit of a contract he must allege and prove compliance with all of its terms on his part. (*Hardwick* v. *State Ins. Co.* 20 Or. 556.)

When the vendor fails to deliver goods in accordance with the order, and the vendee has paid the whole or a part of the purchase price of the goods to be delivered, the vendee may sue for breach of contract, or bring an action against the vendor for money had and received, and obtain judgment for the amount paid with interest from the time it was paid. (*Nash* v. *Towne*, 5 Wall. 689; Benj. Sales, § 1305; 2 Greenl. Ev. § 124; 1 Chitty on Pl. *385; *Hoxter* v. *Poppleton*, 9 Or. 481; *Stewart* v. *Phy*, 11 Or. 335; *Peterson* v. *Foss*, 12 Or. 81.)

Strahan, C. J.—The most that can be claimed for the writing signed by F. E. Hall on the seventh of October, 1890, is that it is an offer on the part of the defendant to sell to A. W. Sefton and J. M. Siglin a printing outfit, comprising a listed invoice, at certain rates of discount; and the letter addressed to the defendant by Siglin & Luse under date of November 7, 1890, enclosing list of machinery and material wanted, was a notice to the defendant that Messrs. Siglin & Luse were willing to buy the outfit under the terms previously proposed to Sefton & Siglin, and a request that the same be billed and forwarded to them in a particular manner, and they enclosed their check with

said order for $1,200. The question therefore to be determined is whether or not the defendant so complies with its offer to sell and the plaintiff's order as to create a legal liability or duty on the part of the plaintiff to receive the material shipped and to make payment therefor. The plaintiff directed the defendant to mark goods "Sun Publishing Co., Marshfield, Oregon, care of Coos Bay Coal & Navigation Co., San Francisco, Cal." Instead thereof, the defendant marked and shipped the goods to Flanagan & Bennett, bankers, at Marshfield, Oregon, together with an invoice of the goods so shipped, and bills of lading thereof, accompanied by a draft for $580.59, which was the balance claimed to be due for said goods. The shipments were made in several parts, from November 25, 1890, to December 8, 1890. Whether this departure from the plaintiff's instructions would of itself be sufficient to justify its refusal to take the goods, it seems is unnecessary for us to determine at this time; but some of the authorities to which our attention has been directed appear to hold as much. (*Bruce* v. *Pearson*, 3 Johns. 534; *Corning* v. *Colt*, 5 Wend. 254; *Eliason* v. *Henshaw*, 4 Wheat. 225.) But however this may be, we think, under the facts found by the court, the plaintiff was not bound to receive or pay for the outfit forwarded by the defendant company for other reasons.

On the thirtieth day of December, 1890, Flanagan & Bennett presented the draft for balance of bill to the plaintiff, with invoices of the goods, and offered to deliver the bills of lading, but the plaintiff refused to receive the same or to pay said draft, and a question is made by the plaintiff that its order as to time of shipment and delivery was not complied with. By its order they informed the defendant "as we desire to make the first issue January 7, 1891, it is desirable that the material be here not later than December 10, proximo, hence will ask you to ship at once and notify us of date of shipment."

The principle contended for by counsel for respondent is stated in 1 Parsons on Cont. *538, as follows. "And generally wherever in a contract of sale it is stated that some precise fact is to be done by either party, this may amount to a condition, though not so expressed. As when in a contract for sale of goods the words are 'to be delivered on or before' a certain day, this is a condition precedent, and if they are not delivered on or before that day the purchaser is not bound to take the goods." And the principle is that if time appear, on a fair consideration of the language and the circumstances, to be of the essence of the contract, stipulations in regard to it will be held conditions precedent. (Benj. Sales, § 593; *Higgins* v. *Deleware, etc. R. R.* 60 N. Y. 553.)

It appears from finding numbered 5 that the items in the list of goods ordered as stated in a former finding of 175 pounds of long primer No. 11, and 150 of brevier No. 13, were not filled or sent in the shipment of the goods sent, or at all, but that instead thereof the defendant sent in said shipment 176½ pounds of long primer and 151 pounds of brevier of a different face from that ordered by plaintiff; that the order was made by reference to a specimen book furnished by the defendant containing samples of the type sold by it, and were in said order designated by numbers appearing on said book. Under these facts the plaintiff was not bound to accept goods differing from the samples appearing in the book furnished it, and from which the selections were made.

Whether the samples in the book furnished by the defendant from which the selections were made rendered this transaction a sale by sample, it is unnecessary to consider for the reason that the plaintiff had the right to repudiate the transaction and to refuse to accept the goods if they were not what it ordered; but the appellant contended on this point that the transaction was divisible, and while the plaintiff was not bound to accept any goods

which it did not order, it was bound to accept and pay for such as were ordered by it.

The consideration was entire, and the merchandise ordered was a printing outfit for a country newspaper. This outfit was composed of a vast number of items, each one having a separate value, but the fact that they did consist of separate items and valuations could hardly be regarded as decisive. Was the type such an essential part of the outfit that a change in its face or style from that ordered would materially affect the outfit? We think it would. A publisher has a right to determine for himself what style of type shall fill his columns, and the manufacturer must content himself by furnishing such as are ordered. In this case the plaintiff may have been unwilling to issue a paper printed on such type as the defendant selected. In such case it was not bound to accept a part of the outfit and then undertake to procure in other markets such a type as it had ordered. Such a course would impose additional expense, risk and delays upon it which it was not bound to incur or assume.

The defendant encounters another difficulty in its endeavor to compel the plaintiff to accept these goods. The plaintiff had the right to examine and inspect the goods before it could be required to accept and pay for the same. It is elementary law that in offering delivery the vendor is bound to give the buyer an opportunity of examining the goods, so that the latter may satisfy himself whether they are in accordance with the contract. (2 Benj. Sales, § 1042; *Croninger* v. *Crocker*, 62 N. Y. 151.) Under the findings in this case, the plaintiff never had the opportunity to inspect said goods. The invoices were delivered, and Messrs. Flanagan & Bennett offered to deliver the bills of lading on payment of the draft, but this being refused, nothing further was done.

A careful examination of the record fails to disclose

any error in the judgment appealed from, and the same must therefore be affirmed.