FILED
04/15/2026
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 29, 2025 Session

**MONICA D. SORENSEN v. JAYSON R. SORENSEN**

**Appeal from the Circuit Court for Montgomery County**
No. 22-CV-55        Kathryn Wall Olita, Judge
_____

**No. M2024-01651-COA-R3-CV**
_____

The trial court denied Husband's timely motion to alter or amend a divorce decree involving child custody, child support, and the distribution of military retirement benefits. Several days later, the trial court entered a Military Retired Pay Division Order. Husband's notice of appeal was filed more than thirty days after the former order, but within thirty days of the latter order. Because we determine that the time for filing an appeal from the order denying Husband's motion was not affected by the entry of the Military Retired Pay Division Order, we conclude that Husband's appeal was untimely. Without a timely filed notice of appeal, this Court lacks jurisdiction, and the appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which CARMA DENNIS MCGEE and VALERIE L. SMITH, JJ., joined.

Jayson R. Sorensen, Clarksville, Tennessee, Pro se.

Stacy A. Turner, Clarksville, Tennessee, for the appellee, Monica D. Sorensen.

**OPINION**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff/Appellee Monica D. Sorenson ("Wife") and Defendant/Appellant Jayson R. Sorenson ("Husband") were married in September 2008. Two children were born of the marriage, a daughter in 2014 and a son in 2017.

Wife filed a complaint for absolute divorce in the Montgomery County Circuit Court ("the trial court") on January 14, 2022. Wife raised the grounds of irreconcilable differences and inappropriate marital conduct. Wife sought to be named primary residential parent of the parties' children and to be awarded spousal support.

In his answer and countercomplaint, Husband, through counsel, admitted that irreconcilable differences existed between the parties, denied that he was guilty of inappropriate marital conduct, and alleged Wife's own inappropriate conduct as an affirmative defense. Husband sought a divorce in his favor and to receive shared parenting time, or alternatively to be named the primary residential parent.

Husband submitted an income and expenses affidavit in May 2022. The affidavit listed his net monthly income as $6,495.23 and his total monthly expenses as $8,088.45. Husband amended his affidavit in June 2022, to show a net monthly income of $6,719.78.

In November 2022, Wife moved to restrict Husband to solely supervised visitation based on allegations of alcohol abuse following an arrest for driving under the influence. After a hearing and over Husband's objections, the trial court granted Wife's motion by order of January 3, 2023, directing that both parties were prohibited from consuming alcohol during their parenting time. The trial court directed that Husband's parenting time was to be supervised by his paramour and Husband was further prohibited from driving with the children. Husband filed multiple motions seeking to remove the transportation restrictions, which were denied.

On February 16, 2023, Wife moved to set child support and Husband's visitation pending a final hearing. Wife also filed a motion seeking to enforce the parties' mediated agreement from December 2022.[1]

On February 17, 2023, Husband's counsel submitted a letter to the trial court judge outlining certain concerns Husband held regarding the judge's ability to impartially adjudicate the case. The alleged concerns included the judge's relationship with Wife and with persons who may be called as witnesses, the judge giving greater weight to the arguments of Wife's counsel than those by Husband's counsel, and the judge's failure to enter a parenting plan or appoint a guardian ad litem. The letter further indicated that

---

[1] The agreement addressed the division of the parties' debts, bank accounts, and personal property, including that Wife would attempt to assume the loan associated with her vehicle and would otherwise refinance the loan within sixty days "so long as she can receive a comparable interest rate." The division of Husband's military retirement benefits was set out separately, with Wife to receive a portion of Husband's "disposable military retired pay using the current formula based upon 50% of the portion of the retirement that accrued during the marriage." As to real property, the parties agreed that Wife would receive the marital residence, assume and refinance the mortgage within one year, and pay Husband $30,000.00; Husband would receive an out-of-state property. Neither party would receive alimony. The parties were unable to agree on a parenting plan.

Husband had agreed to certain aspects of the parties' mediated agreement because he felt that the judge would not be equitable in dividing the parties' property and that he had been compliant with Wife's limited visitation schedule because he feared the judge would keep the children from him. The letter stated that Husband wanted to give the trial court judge the opportunity to recuse herself prior to filing a formal recusal request.

The trial court addressed both pending motions and Husband's recusal letter by order of March 17, 2023. The trial court judge declined to sua sponte recuse herself, denying any relationship with individuals connected with the matter or independent knowledge of Wife. The trial court granted Wife's motion to enforce the mediated agreement, requiring Husband to pay to Wife $1,064.17 each month as her portion of his military retirement benefits. Any retroactive balance was reserved for a final hearing. The trial court also ordered that Husband's visitation would continue, with his supervised parenting time being every other weekend and Tuesday and Thursday evenings on the alternate weeks. The trial court further directed Husband to pay $1,502.00 in child support.

Husband filed a motion to reconsider the trial court's order, as to both the military retirement benefits payment and the amount of child support. Husband then filed a motion seeking to enforce that portion of the parties' mediated agreement requiring Wife to refinance her vehicle in her name. Husband later filed a motion seeking to enforce other portions of the mediated agreement in relation to Wife's refinancing of the marital home and his retrieval of personal property.

The matter was eventually heard in March and July 2024. The trial court issued its memorandum opinion and final order on August 1, 2024.[2] The trial court detailed Wife's testimony regarding Husband's longstanding issues with alcohol, noting that Husband had been able to maintain sobriety for only about a year and a half of the parties' fourteen-year marriage. Following Husband's November 2022 arrest, he was accepted into the Montgomery County Veterans Treatment Court. At the time of trial, Husband had achieved over five hundred days of sobriety, which the trial court acknowledged "is no small feat."

Still, the trial court found that Husband "expressed no regret for his past difficulties and the impact they have had on this marriage and this family." The trial court noted that "Husband's demeanor at trial was angry, aggressive and defensive" and that "[i]n many instances, he refused to accept responsibility for his decisions and behaviors[.]" The trial court also recounted messages Husband sent to Wife after the start of trial which the court found to be "demeaning and border on threatening[,]" as well as his efforts to physically intimidate Wife in the courtroom. In combination with his "highly agitated and angry" tone and demeanor while testifying, the trial court found that Husband's "intimidation and

---

[2] We note with appreciation the thoroughness of the trial court's order. In light of the deficiencies in the parties' briefing, with neither party citing to the record or, indeed, including any statement of the facts, the comprehensive nature of the order was particularly beneficial to our review.

veiled threats to Wife in order to influence the outcome of this litigation impact[ed] his credibility." Ultimately, the trial court found Husband at fault for the demise of the parties' marriage and awarded Wife a divorce on the ground of inappropriate marital conduct.

The trial court reaffirmed its March 2023 order enforcing the parties' mediated agreement in relation to Wife's receipt of a share of Husband's military retirement benefits. However, the trial court found that Husband had failed to pay the entire amount ordered between March 2023 and October 2023, and had failed to pay any amount in January or February 2023, or after November 2023. The trial court also awarded retroactive payments from the February 2022 date of separation through the December 2022 date of mediation. In total, Wife was entitled to a $24,355.71 judgment in unpaid retirement benefits.

As part of the mediation agreement, the trial court also directed Wife to refinance the mortgage on the marital residence within sixty days. Husband's entitlement to $30,000.00 following the refinancing was set off against Wife's retirement arrearage judgment, such that Wife was to pay Husband $5,466.83 at the time of refinancing. Wife was directed to continue making the final payments on the vehicle financed in Husband's name, as she was unable to refinance it at a comparable rate as set out in the agreement.

The trial court found that after his retirement from military service in 2020, Husband worked for a hotel for approximately one and a half years, earning about $50,000.00 per year. Husband then began working for Amazon, also earning around $50,000.00 per year. However, that employment lasted only approximately five months, after which he voluntarily chose not to seek new employment. Instead, Husband spends his time overseeing his girlfriend's daughter's home-schooling, renovating his girlfriend's son's home, and working on his girlfriend's home. Husband receives $8,203.16 in disability and retirement benefits associated with his military service, but no medical evidence was presented showing that he is unable to work. The trial court noted Husband's testimony that he chooses to stay busy so that he does not have to work for "the Man." The trial court did not find Husband's choice to be reasonable in light of his duty to support his own children and so found "it appropriate to impute income to Husband due to his failure to maintain gainful employment despite an ability to do so." Based on Husband's income while working, the trial court imputed an additional $4,166.67 in income, making a total of $12,369.83, for purposes of determining child support.

Wife's income was determined to be $6,249.53 per month. Wife was credited $1,009.58 for monthly work-related childcare, and Husband was credited for payment of the children's health insurance. The trial court noted that once Wife's share of the retirement benefits was calculated and actually received by her, that amount would be deducted from Husband's income and added to Wife's, for child support purposes.

In comparing the parties' proposed parenting plans, the trial court considered the factors set out in Tennessee Code Annotated section 36-6-106. The trial court found the

vast majority of the factors to favor Wife's proposed plan, as she had been the children's primary caregiver both before and after the parties' separation and had shown a willingness to co-parent lacked by Husband. Accordingly, Wife was designated the children's primary residential parent and awarded 273 days of parenting time. Husband received 92 days of parenting time, consisting of Friday to Sunday evening of one week and Tuesday and Wednesday evenings of the following week. The plan included a provision prohibiting Husband from consuming any alcohol during his parenting time but removed the supervision requirement and the restriction on his ability to transport the children based on his completion of Veterans Treatment Court. Using the parties' income as found by the trial court, Husband was directed to pay $1,893.00 in monthly child support.

The trial court awarded Wife a judgment of $237.47 as Husband's share of co-pays for the children's past medical treatment. Neither party was awarded attorney's fees. The order concluded with the trial court's determination that all issues associated with the case were thereby adjudicated and any remaining motions or claims for relief were denied and dismissed. The trial court designated the order as final and found no just cause for delay.

Shortly thereafter, Wife filed a motion asking that Husband be ordered to file a Military Retired Pay Division Order, as he possessed all of the necessary information.

Husband then filed an extensive motion to reconsider or set aside the order on September 3, 2024. Husband asserted that the court's findings related to his drinking problem were supported by insufficient or improper evidence and that testimony that Wife consumed alcohol during her parenting time in violation of the trial court's December 2022 order was ignored despite the focus on Husband's drinking. Husband denied any intent to intimidate Wife and countered that Wife had mocked him during his testimony. Husband stated that Wife's entitlement to his military retirement benefits should have been reduced based on her failure to accompany him when he was relocated to different duty stations. He also argued that Wife's portion of his retirement benefits had been improperly calculated. Husband asserted that documentation had been submitted reflecting his total and permanent military disability rating, and that his retirement benefits should have been considered adequate income. Husband stated that Wife had misrepresented her monthly income and that her depletion of marital funds following her filing for divorce should be factored into the trial court's award. Husband requested that the trial court amend the parenting plan to reflect equal parenting time as in the children's best interests. Husband also sought to be awarded a divorce based on Wife's inappropriate marital conduct in light of her extra-marital relationships. Husband further sought to be awarded both his own attorney's fees and the amount previously paid to Wife's attorney from the marital funds, totaling $14,500.00. Husband's motion was accompanied by numerous exhibits.

Wife filed a response in opposition to the motion. She contested several of Husband's statements and noted that some of the evidence Husband was attempting to rely upon had not been presented at trial. Wife further noted that the calculation and distribution

of her portion of Husband's retirement benefits had been settled as part of the December 2022 mediation agreement.

The matter was heard on September 13, 2024, and the trial court denied Husband's motion by order of September 20, 2024. The trial court found that Husband had failed to cite any authority to support his request for relief, but that under either Rule 52.02 or Rule 60.02 of the Tennessee Rules of Civil Procedure, the evidence at trial supported the August 2024 order, and no modification was necessary. The trial court concluded that because "there has been no legal basis presented to set this judgment aside or modify it in anyway that the Court[] finds this is a final judgment for appeal."

The trial court entered a Military Retired Pay Division Order on October 1, 2024. The order stated that Wife was entitled to twenty-nine percent of Husband's disposable military retired pay based on the parties' 144 months of marriage, Husband's 249 creditable months of military service, and the mediated agreement award of fifty percent of the benefits accrued during the marriage. The order further listed Husband's "military retired pay base (high-3)[.]"

Husband filed this appeal, pro se, on October 29, 2024.

Wife filed a motion to dismiss Husband's appeal on November 19, 2024. She argued that the thirty-day period for filing an appeal was triggered by the trial court's September 20, 2024 order denying Husband's motion to alter or amend because the October 1, 2024 order related to Husband's military pay did not meet the requirements of an appealable order. Because Husband's notice of appeal was filed more than thirty days after the entry of the case's final order, Wife argued that this Court lacked the subject matter jurisdiction to consider the appeal.

Husband's response primarily discussed the merits of his appeal. To the extent that a responsive argument can be gleaned from his filing, Husband appears to argue that the trial court stated at a hearing on September 20, 2024, that a military pay division order would need to be submitted in order for the case to be closed.[3] Judgment on Wife's motion was reserved pending oral argument.[4]

## II. ANALYSIS

### A.

---

[3] We note that no transcript has been filed in this case and Husband's proposed statement of the evidence was not accepted by the trial court.

[4] Our December 4, 2024 order reserving judgment on Wife's motion to dismiss directed that: "The parties shall address the timeliness of the notice of appeal in their briefs." Yet neither party included any discussion of this issue in their brief or during oral argument.

Before we can consider the issues raised by Husband in this appeal, we must first address Wife's argument that this Court lacks the subject matter jurisdiction to do so. "Subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it." *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 713 (Tenn. 2012) (citing *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Standard Sur. & Cas. Co. v. Sloan*, 180 Tenn. 220, 173 S.W.2d 436, 440 (1943)). "Without subject matter jurisdiction, a court cannot enter a valid, enforceable order." *In re S.L.M.*, 207 S.W.3d 288, 295 (Tenn. Ct. App. 2006) (citations omitted).

The starting place for testing our jurisdiction is Rule 3 of the Tennessee Rules of Appellate Procedure, which provides, as relevant here, that: "In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right." Tenn. R. App. P. 3(a). Under Rule 3, an appeal as of right generally may only be taken from a final judgment. *But cf.* Tenn. R. App. 9 (governing discretionary interlocutory appeals for which no final judgment is necessary), 10 (discussing discretionary extraordinary appeals for which no final judgment is necessary). A final judgment for purposes of Rule 3 is one that "decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 460 (Tenn. 1995) (quoting *Saunders v. Metro. Gov't of Nashville & Davidson Cnty.*, 214 Tenn. 703, 383 S.W.2d 28, 31 (Tenn. 1964)); *see also Mengle Box Co. v. Lauderdale Cnty.*, 144 Tenn. 266, 230 S.W. 963, 966 (1921) ("If the entire merits are disposed of, the decree is final; otherwise not."); *In re Est. of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (providing that a final judgment is one that resolves all the claims between all the parties, "leaving nothing else for the trial court to do"). *But cf.* Tenn. R. Civ. P. 54.02 (governing the designation as final of a judgment as to one or more but fewer than all of the claims or parties).

Also relevant is Rule 4 of the Tennessee Rules of Appellate Procedure, which provides the time limit for filing a notice of appeal to this Court:

> In an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]

Tenn. R. App. P. 4(a). The thirty-day time limit for filing a notice of appeal set forth in Rule 4 is mandatory and jurisdictional in civil matters. *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004); *Binkley v. Medling*, 117 S.W.3d 252, 255 (Tenn. 2003). As a result, it cannot be waived or extended. *See* Tenn. R. App. P. 2, 21(b).

However, the time for filing a notice of appeal may be tolled by the timely filing of certain motions. *See generally* Tenn. R. Civ. P. 59.01 (stating that only motions pursuant to Rules 50.02 (for judgment in accordance with a directed verdict), 52.02 (to amend or

make additional findings of fact), 59.07 (for a new trial), and 59.04 (to alter or amend the judgment) will "extend[] the time for taking steps in the regular appellate process"). In the event that a motion under Rule 50.02, 52.02, 59.07, or 59.04 is timely filed, "the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion." Tenn. R. App. P. 4(b).

Here, the trial court entered its memorandum opinion and final order ("the memorandum opinion") on August 1, 2024, and Husband filed a timely Rule 52.02 motion to alter or amend.[5] The trial court's order denying Husband's motion ("the denial order") was filed on September 20, 2024. A Military Retired Pay Division Order ("MRPDO") was then filed on October 1, 2024. Wife argues that under Rule 4(b), the entry of the denial order triggered the thirty-day window for the filing of a notice of appeal. She argues that the MRPDO was not an independently appealable order and so had no effect on the timeline for appealing. Husband opposes this argument, asserting that the trial court stated that the MRPDO was required to finalize the case; thus, he argues that the thirty-day appeals period was triggered by the entry of the MRPDO.

The question before us then, is whether the lack of an MRPDO rendered the denial order non-final. If Wife is correct that it did not, then Husband's October 29, 2024 notice of appeal was filed more than thirty days after the entry of the final order in this case, depriving this Court of subject matter jurisdiction over this appeal. If Husband is correct that the MRPDO is the relevant final order, then his notice was timely, and we will proceed to consider the merits of the appeal.

Important to this discussion is an understanding of what purpose an MRPDO is intended to serve. Under the Uniformed Services Former Spouses' Protection Act ("the USFSPA"), a service member's disposable retirement pay may be treated as communal property between the member and the member's spouse.[6] 10 U.S.C. §1408(c). The USFSPA allows up to fifty percent of a member's disposable retirement pay to be paid directly to the member's spouse and/or one or more former spouses, whether as child

---

[5] In denying Husband's motion, the trial court addressed both Rule 52.02 and Rule 60.02. *See* Tenn. R. Civ. P. 59.02 (requiring motions to alter or amend under Rule 52.02 to be filed within thirty days of the original judgment), 60.02 (requiring motions to relieve a party from a final judgment to be filed not more than one year after the order became final or else within a reasonable time). The trial court's memorandum opinion was filed on August 1, 2024, and Husband's motion was filed on September 3, 2024. August 31, 2024 was a Saturday, and the following Monday, September 2, 2024, was a holiday. Thus, September 3, 2024, was the last possible day for a timely Rule 52.02 motion. *See* Tenn. R. Civ. P. 6.01. Because Husband's motion was filed within the allotted time, the memorandum opinion did not become final, and Rule 60.02 is inapplicable to this case.

[6] Pursuant to the USFSPA, the member's "disposable retired pay" includes the "total monthly retired pay to which a member is entitled" less certain amounts, including those deducted because of an election to provide an annuity "to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section." 10 U.S.C § 1408(a)(4)(A)(iv).

support, alimony, or part of the division of marital property. 10 U.S.C. §1408(d), (e).

Pursuant to the United States Department of Defense Financial Management Regulations ("DoD Regulations"), if a court order provides for a retired pay award, "that award must be expressed as a fixed dollar amount or as a percentage of disposable retired pay." Dep't of Def. Fin. Mgmt. Reg., DoD 7000.14-R, Vol. 7B, Ch. 29 P. 6.1.4 (Dec. 2021). If the award is to be expressed as a percentage of the member's total disposable retired pay, the order must contain all of the necessary terms of the formula set out by the DoD Regulations, *id.* at P. 6.7.1, namely the total months of the parties' marriage during the member's service, the member's total months of creditable service, and the percent of the marital property awarded to the former spouse by the trial court.[7] *See Grayson v. Grayson*, No. E2020-01339-COA-R3-CV, 2021 WL 4026725, at *7 (Tenn. Ct. App. Sept. 3, 2021) (citing Dep't of Def. Fin. Mgmt. Reg., DoD 7000.14-R, Vol. 7B, Ch. 29, para. 290614 and 290615 & fig. 29-1 (June 2021)).[8] The DoD Regulations include a form order with sample findings of fact and conclusions of law with blanks indicating the relevant terms to be included by a court in various circumstances. The sample is titled as an MRPDO. *See* Dep't of Def. Fin. Mgmt. Reg., DoD 7000.14-R, Vol. 7B, Ch. 29 Fig. 29 (Dec. 2021).

However, the DoD Regulations are clear that use of the sample MRPDO or other explicit Domestic Relations Order ("DRO") is not necessary to effect an enforceable award of the member's disposable retired pay. *See id.* at P. 6.3 (Dec. 2021) ("There is no requirement in USFSPA that a former spouse submit a DRO, but the designated agent will accept one if it is submitted and if it meets the requirements of the USFSPA."), 6.7.4 ("The sample Military Retired Pay Division Orders . . . provide examples of acceptable formula award language. . . . The sample language is not required, but any award expressed using the applicable sample language will be acceptable."). Indeed, the DoD Regulations include the following definition of a "court order" capable of directing the payment of a member's disposable retired pay directly to the member's spouse or former spouse:

> Court order means a final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a property settlement incorporated into such an order. Court order also includes orders issued incident to a divorce, such as an order dividing military retired pay or a domestic relations order (DRO) that divides military retired pay.

*Id.* at P. 2.4. In other words, an MRPDO or DRO is just one of many acceptable methods

---

[7] The inclusion of these terms—rather than language simply awarding the former spouse a percentage of the member's retirement benefits accrued during the marriage—is necessary because "military retired pay does not accrue over time. . . . Rather, it is a statutory entitlement computed at the time the member retires[.]" Def. Fin. Mgmt. Reg., DoD 7000.14-R, Vol. 7B, Ch. 29, P. 6.14 (Dec. 2021).

[8] While the exact language used to express the terms of the formula has been amended for clarity in subsequent versions of the DoD Regulations, the actual equation itself has not been altered.

a court might use to create an award of a portion of a member's disposable retired pay that would be honored under the USFSPA.

This Court has previously accepted orders involving the distribution of a party's military retirement benefits as final despite the lack of an MRPDO detailing the award. We have also allowed for the later entry of an MRPDO to clarify the intended purpose of the initial order.

In *Lambert v. Lambert*, the trial court's December 1999 divorce decree incorporated the parties' marital dissolution agreement, and so provided that the wife would receive fifty percent of the husband's "military retired pay" upon his retirement. No. M2013-01885-COA-R3-CV, 2014 WL 3563630, at *1 (Tenn. Ct. App. July 18, 2014). The parties later remarried each other and then divorced again. The trial court's June 2004 divorce decree incorporated the parties' second marital dissolution agreement, which referenced the wife's initial award of fifty percent of the husband's military retirement pay. *Id.* at *2. Despite neither divorce decree being accompanied by an MRPDO or DRO, this Court found that both orders became final when no appeal was filed within the applicable thirty-day period. *Id.* at *3. Nor was the finality and operation of these orders impacted when a qualified DRO was submitted to the Defense Finance and Accounting Service ("DFAS") in 2008, after the earlier awards had been rejected for their imprecise language. The husband's 2010 request that the trial court find an alimony award contained in the second marital dissolution agreement unconscionable was therefore not appropriate for consideration on appeal. *Id.* at *9.

In *Grayson v. Grayson*, the trial court entered a divorce decree in May 2011, awarding the wife one half of the husband's military retirement accumulated during the marriage. No. E2020-01339-COA-R3-CV, 2021 WL 4026725, at *1 (Tenn. Ct. App. Sept. 3, 2021). The trial court then amended its order in April 2018, upon notice from the wife that the order had been rejected by DFAS for failure to include either a dollar amount or a percentage award. The amended order was again rejected by DFAS, this time for failure to include a method by which to calculate the marital portion of the husband's retirement. *Id.* Neither order was accompanied by a MRPDO or DRO.

Shortly thereafter, in October 2018, the wife petitioned for another amendment to the order and the entry of her proposed MRPDO, to better comply with the DoD Regulations. *Id.* The trial court granted the petition over the husband's opposition, "indicating that the purpose of the order would be to 'clarify its intention' and noting that the court had found no unresolved issues with regard to the divorce action or retirement award." *Id.* at *3. The trial court then entered an MRPDO in November 2020 that awarded the wife one half of the husband's disposable retirement pay and listed the husband's rank as of the date of divorce and his creditable years of service.

On appeal, the husband asserted that the trial court lacked the subject matter

jurisdiction to grant the wife's October 2018 petition and enter a second amended order related to his military retirement pay. *Id.* at \*4. He argued that the petition functioned as a motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59.04, which needed to be filed within thirty days of the order to be amended. This Court looked to the substance of the petition, noting that the wife did not allege a change to the law or to the facts, or that a clear error of law had been made, as well as to the trial court's explicitly stated purpose of merely clarifying its original intent as included in the earlier orders. *Id.* at \*5. As such, we determined that the petition had instead been treated as a motion to correct a clerical error in a final judgment under Rule 60.01. *Id.* at \*6; *see also* ***Campbell v. Archer***, 555 S.W.2d 110, 112 (Tenn.1977) ("The function of [Rule 60] is to give relief from *final* judgments; Rule 59 . . . is the appropriate remedy for asserting alleged errors affecting a judgment which has not yet *become final*." (emphasis added)). Thus, the fact that the April 2018 amended order contained the retirement benefit award on its face, rather than in a separate MRPDO or DRO, was not an impediment to it becoming final.

We further concluded that despite this finality, "the trial court maintained subject matter jurisdiction to facilitate the enforcement of its prior orders by correcting the language to comply with DFAS requirements" pursuant to Rule 60.01. ***Grayson***, 2021 WL 4026725, at \*4; *see also id.* at \*8 (citing ***Jackman v. Jackman***, 373 S.W.3d 535, 542 (Tenn. Ct. App. 2011) (affirming that Rule 60.01 is "intended to be used to correct errors in a judgment which cause the judgment to fail to reflect the court's ruling accurately"); ***Battleson v. Battleson***, 223 S.W.3d 278, 288 (Tenn. Ct. App. 2006) (concluding that it was "within the province of the trial court to clarify, interpret or explain what it meant in its prior order," pursuant to Rule 60.01, when a provision in its parenting plan did not "make sense on its face" and required clarification); ***Stout v. Stout***, No. E2013-00760-COA-R3-CV, 2013 WL 6858279, at \*4 (Tenn. Ct. App. Dec. 30, 2013) ("This Court has previously recognized that a trial court may retain jurisdiction to establish or maintain a QDRO with regard to the division of retirement benefits incident to divorce" and "that the trial court has the authority, pursuant to Tennessee Rule of Civil Procedure 60.01, to correct an error in a judgment *sua sponte* without limitation as to time.")). Accordingly, although the April 2018 amended order's finality was not negated by its lack of an MRPDO, neither was there any reversible error in the subsequent entry of an MRPDO clarifying the initial award to better comply with the DoD Regulations.[9]

---

[9] This Court was clear, however, that although the trial court retained the authority to clarify its earlier orders, it did not have the authority to make changes to or deviate from those orders. *Id.* at \*8. The November 2020 MRPDO was therefore rendered void, as its language could be construed as broadening the wife's original award of one half of the marital portion of the husband's military retirement into an award of one half of the husband's total retirement. *Id.*; *see also* ***Fry v. Fry***, No. M2000-02969-COA-R3-CV, 2001 WL 1543478, at \*2 (Tenn. Ct. App. Dec. 5, 2001) (reversing the trial court's order granting the wife's Rule 60.02(5) motion to amend an earlier award of a portion of the husband's military retirement benefit because the amended order broadened the award and so was impermissibly "substantive and not just clerical").

These rules have been applied to awards distributing private retirement benefits as well. In **Lagrone v. Lagrone**, the parties' February 1994 divorce decree incorporated a marital dissolution agreement providing that the profits from the sale of the marital residence would be paid into the husband's 401(k) plan. No. 01A01-9603-CH-00125, 1996 WL 512032, at *1 (Tenn. Ct. App. Sept. 11, 1996). The agreement also provided that a specified amount would then be transferred from the husband's 401(k) plan to the wife, an amount that would increase or decrease by a stated percentage of the plan's change in value based on the appreciation or depreciation of certain assets between a particular date and the date of transfer. The decree further directed that the wife's interest would be transferred pursuant to the terms of a qualified DRO filed within thirty days of the sale. *Id.* As planned, a DRO was entered in June 1995, awarding the wife the sum agreed to, as well as her "pro rata share, if any, of the unallocated income or losses" since thirty days after the sale of the property. *Id.* Relying on this language, the 401(k) plan administrator transferred the sum to the wife, plus the interest on that amount from thirty days after the sale of the property to the date of the transfer. The wife filed a motion requesting a modification of the DRO, arguing that the amount she received was less than the amount established in the parties' agreement. The trial court denied the motion. *Id.* at *2.

On appeal, this Court determined that the June 1995 DRO did "not conform to the provisions of the Final Decree of divorce which had become final long before the []DRO was entered." *Id.* at *3. Even though the divorce decree expressly anticipated the entry of a DRO to facilitate the retirement benefits award, the lack of a DRO did not render the decree non-final or otherwise susceptible to amendment after thirty days had elapsed. We vacated the DRO and remanded the matter for the entry of a DRO compliant with the trial court's February 1994 order. *See also* **George v. Smith-George**, No. W2020-01583-COA-R3-CV, 2022 WL 168342 (Tenn. Ct. App. Jan. 19, 2022) (enforcing the terms of a later-filed qualified DRO, where the entry of the DRO was anticipated in the marital dissolution agreement incorporated into the final divorce decree, insofar as the DRO did not conflict with the agreement); **Ziobrowski v. Ziobrowski**, No. M2006-02359-COA-R3-CV, 2007 WL 4530460 (Tenn. Ct. App. Dec. 20, 2007) (refusing to modify a substantive aspect of a divorce decree anticipating the entry of a qualified DRO that was not appealed within thirty days where the DRO was not filed for ten years, and finding the DRO void to the extent that it conflicted with the final decree).

As such, it appears that a specialized order is not necessary for a divorce decree containing a retirement benefits award to become final. But the finality of the decree does not limit the trial court's ability to later enter an MRPDO or DRO to clarify the retirement benefits award as stated in the decree or rephrase the award to comply with DoD Regulations, so long as the substance of the initial award remains unchanged.

With these cases in mind, we turn to the retirement benefits award in this case. There can be no question that the verbiage used in the parties' December 2022 mediated agreement did not meet the requirements set out in the DoD Regulations, as it merely

provided for Wife to receive, as marital property, fifty percent of Husband's retirement benefits that had "accrued during the marriage." As noted above, a service member's retired pay does not accrue. Def. Fin. Mgmt. Reg., DoD 7000.14-R, Vol. 7B, Ch. 29, P. 6.14 (Dec. 2021). Without the inclusion of the length of the parties' marriage that overlapped Husband's creditable service, this marital property award did not contain all of the necessary terms to qualify as a formula award. *Id.* at P. 6.7.1. Instead, the trial court set out a dollar amount award in the memorandum opinion, specifically $1.064.17. The subsequent denial order declined to alter this dollar amount award. Without any transcript from the hearings before the trial court, we cannot know why the trial court later entered the MRPDO to include a formula award.

We are therefore left with a memorandum opinion containing a dollar amount award of $1,064.17, and an MRPDO containing a formula award equating to twenty-nine percent.[10] Neither party argues that the formula award differs from the dollar amount award included in the trial court's earlier orders. As such, there is no indication that the MRPDO served any purpose beyond clarifying the award expressed in the memorandum opinion and affirmed by the denial order. Because the MRPDO was not an alteration or amendment of the denial order, we find no reason to accept Husband's assertion that the entry of same was necessary to finalize the case.

This Court dealt with an analogous situation in the recent case of ***Hill Boren Properties v. Ricky Lee Boren***, No. W2025-00675-COA-R3-CV, 2026 WL 942511, at *1 (Tenn. Ct. App. Apr. 8, 2026). There, after years of contentious motions practice, the parties reached a settlement agreement memorialized by email. As relevant, the agreement required the appellants to transfer certain real property to the appellee, who would then voluntarily dismiss the pending litigation. *Id.* at *3. In response to cross-motions to enforce the agreement, the trial court upheld the terms contained in the emails between the parties and relied on the normal and usual course of dealing for those terms not expressly agreed upon. *Id.* at *4. As contemplated by the agreement, the trial court entered an order of dismissal with prejudice on March 20, 2025; the order stated that all issues in the matter had been resolved. On the same day, the trial court entered a separate order pertaining to ancillary aspects of the settlement agreement; this order also stated that the merits of the case had been fully resolved. *Id.* at *5.

Despite the trial court's upholding of the settlement agreement, the appellants failed to execute deeds transferring the real property to the appellee. The trial court entered an order on April 10, 2025, reiterating its earlier orders and warning that failure to comply would amount to contempt; the order was designated as a final judgment pursuant to Rule 54.02. *Id.* The appellants again failed to execute the required deeds, instead filing a notice

---

[10] To reach this percentage, the MRPDO divided the parties' 144 months of marriage by Husband's 249 creditable months of service before multiplying the result by Wife's award of fifty percent of the marital portion of Husband's disposable retired pay.

- 13 -

of appeal on May 8, 2025, asserting that the trial court erred in enforcing the settlement agreement despite its silence as to certain terms. *Id.*

The appellee argued that this Court lacked jurisdiction over the appeal, as the appellants' notice of appeal was filed more than thirty days after the entry of the order of dismissal with prejudice. We agreed, determining that the trial court's entry of subsequent orders did "not change the analysis" related to the appellants' failure to file a notice of appeal or one of the specific post-judgment motions serving to toll the time to appeal within thirty days of the March 20, 2025 order. *Id.* at *8. The emphasis was not on the mere fact that the trial court filed additional orders, but on the fact that the later orders did not involve further adjudication of any outstanding issues. We found that the later orders directing the parties to comply with the dismissal order "did not 'affect[] any of the parties' substantive rights and obligations settled by the first judgment' entered March 20, 2025." *Id.* (quoting ***Ball v. McDowell***, 288 S.W.3d 833, 837 (Tenn. 2009)). That compliance with the trial court's orders would require the parties to file additional documents was also of no effect. Again, these "administrative tasks" to be completed by the parties were simply not claims to be adjudicated by the trial court. *Id.* (quoting ***Thompson v. Graham***, No. E2024-00568-COA-R3-CV, 2025 WL 1591386, at *3 (Tenn. Ct. App. June 5, 2025), *perm. app. granted*, No. E2024-00568-SC-R11-CV, 2025 WL 2902334 (Tenn. Oct. 9, 2025)). The anticipation of further filings "[did] not mean . . . that the trial court ha[d] something left to rule on for purposes of finality." *Id.* (quoting ***Thompson***, 2025 WL 1591386, at *4).

Ultimately, we concluded that after the dismissal order, there was nothing substantive remaining for the trial court to decide. Because the March 20, 2025 order "disposed of all of the claims of all parties, it operate[d] as the final judgment which triggered the thirty-day time limit for filing a notice of appeal." *Id.* at *7 (citing ***Poff v. Poff***, No. 01-A-01-9301-CV00024, 1993 WL 73897, at *1 (Tenn. Ct. App. Mar. 17, 1993) ("An order resolves all claims if it leaves nothing else for the trial court to do with regard to the original proceeding.")). As the appellants' notice of appeal was filed more than thirty days after the final substantive order in the case was entered, this Court concluded that we did not have jurisdiction over the appeal. *See also* ***Duffy v. Duffy***, No. M2023-00747-COA-R3-CV, 2024 WL 4879137 (Tenn. Ct. App. Nov. 25, 2024) (dismissing the appeal as untimely where the notice of appeal was filed within thirty days of the entry of a permanent parenting plan, but more than a year after the entry of the final substantive order anticipating the filing of the plan).

Similarly, the denial order entered September 20, 2024 marked the trial court's adjudication of the final substantive issue in this case, and indeed, the appellate issues raised by Husband were all conclusively decided by the trial court's denial of his motion to alter or amend the memorandum opinion. The denial order expressly stated that it was a final judgment for appeal. From all of the above, we know that the entry of the MRPDO on October 1, 2024 was not required for the enforcement of Wife's award of a portion of Husband's military retirement benefits. It is also clear that even if an MRPDO or other

specialized order *was* necessary or otherwise anticipated by the denial order, its purely administrative nature renders it of no effect in our analysis of the timeliness of Husband's notice of appeal.

We conclude, therefore, that the denial order was not rendered non-final by its lack of an MRPDO, and its finality was not impeded by the subsequent entry of the clarifying MRPDO. So then, the thirty-day appeals period began running upon the September 20, 2024 entry of the denial order, rather than the October 1, 2024 entry of the MRPDO. Husband's October 29, 2024 notice of appeal was thus untimely, and incapable of perfecting an appeal.[11] Accordingly, we do not have subject matter jurisdiction to consider the merits of this appeal, and the appeal must be dismissed.

**B.**

Wife seeks her appellate attorney's fees pursuant to Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"An appeal is frivolous when it 'has no reasonable chance of success' or is 'so utterly devoid of merit as to justify the imposition of a penalty.'" ***Stokes v. Stokes***, No. M2018-00174-COA-R3-CV, 2019 WL 1077263, at *10 (Tenn. Ct. App. Mar. 7, 2019) (quoting ***Chiozza***, 315 S.W.3d at 493). An award of appellate attorney's fees is within this Court's sole discretion, though the statute is meant to be applied sparingly "to avoid discouraging legitimate appeals." ***Id.*** (citing ***Chiozza***, 315 S.W.3d at 493). We exercise our discretion to respectfully decline to award Wife her attorney's fees related to this appeal.

---

[11] We acknowledge that Husband is proceeding pro se in this appeal, including in the filing of his notice of appeal. "The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs." ***Hessmer v. Hessmer***, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). However, it is well settled that, "[w]hile a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, . . . [p]ro se litigants must comply with the same substantive and procedural law to which represented parties must adhere." ***Chiozza v. Chiozza***, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (citing ***Hodges v. Tenn. Att'y Gen.***, 43 S.W.3d 918, 920–21 (Tenn. Ct. App. 2000)). And although this Court has the discretion to waive certain requirements set out in the Tennessee Rules of Appellate Procedure, we are prohibited from waiving a late-filed notice of appeal. *See* Tenn. R. App. P. 2 (providing that this Court may suspend the Rules of Appellate Procedure, "[f]or good cause, including the interest of expediting decision upon any matter, . . . except that this rule shall not permit the extension of time for filing[, inter alia,] a notice of appeal prescribed in Rule 4").

### III. CONCLUSION

This appeal is dismissed for failure to file a timely notice of appeal, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Jayson R. Sorenson, for which execution may issue if necessary.

S/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE